[S.F. No. 24706. Nov. 8, 1984.]

PATRICIA MacGREGOR, Plaintiff and Respondent, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Appellant;
EMPLOYMENT DEVELOPMENT DEPARTMENT et al.,
Real Parties in Interest and Respondents.

**COUNSEL**

George Deukmejian and John K. Van de Kamp, Attorneys General, Charlton G. Holland and Asher Rubin, Deputy Attorneys General, for Defendant and Appellant.

Robert J. Shull and Cynthia L. Rice for Plaintiff and Respondent.

No appearance for Real Parties in Interest and Respondents.

**OPINION**

**REYNOSO, J.**—When a worker leaves her employment to accompany her "nonmarital partner" to another state in order to maintain the familial relationship they have established with their child does she voluntarily leave work with good cause within the meaning of the statute governing eligibility for unemployment insurance benefits? We left open the possibility that a claimant might show good cause in such circumstances when we decided *Norman* v. *Unemployment Ins. Appeals Bd.* (1983) 34 Cal.3d 1 [192 Cal.Rptr. 134, 663 P.2d 904] less than two years ago. ██ We now hold that Patricia MacGregor has established that her quitting was motivated by the need to preserve the family she had established with her nonmarital partner and their child, and that this need constituted good cause for her voluntary departure from work. We therefore affirm the judgment of the Santa Clara County Superior Court ordering the Unemployment Insurance Appeals Board to reconsider its decision and to award benefits to plaintiff if she meets other eligibility requirements.

Plaintiff Patricia MacGregor worked as a waitress at the Ramada Inn in Santa Clara, California from July 7, 1978, through December 31, 1979. On January 1, 1980, she began a six-month pregnancy leave of absence. According to the terms of her leave, she was to return to work in June of 1980.

MacGregor was engaged to and lived with Dick Bailey, the father of her expected child. Their daughter Leanna was born February 29, 1980. The three continued to live together as a family. Bailey acknowledged that he was Leanna's father.

In April, Bailey decided the family should move to New York to live with and care for his 76-year-old father. At the time, his father was under medical care for a variety of serious ailments and anticipated surgery later that summer. Because of his ill health he no longer wished to live alone. No relatives lived nearby and Bailey was the only child. Bailey's father asked if Bailey, MacGregor and their daughter would come to live with and care for him. In May MacGregor informed her employer that she would not be returning to work.

MacGregor, Bailey and their daughter moved into Bailey's father's home in June. When MacGregor was unable to find work, she applied for unemployment insurance benefits. Her claim was referred to the California Employment Development Department (Department), which determined that she had quit voluntarily without good cause and was thus ineligible for benefits. (Unemp. Ins. Code, § 1256.)[1]

MacGregor appealed this decision. A hearing was conducted before a referee in Massena, New York. The transcript was referred to the Department where it was considered by an administrative law judge. The judge determined MacGregor had left her most recent work voluntarily without good cause and was thus disqualified from receiving benefits. Although the judge found evidence in the record indicating that Bailey had to return to New York to care for his father who was ill, the judge concluded that "it [was] not apparent why it was essential for the claimant to follow." Since there was no marriage, no plans to marry at a certain future date, and no assurance the relationship would continue for any particular period of time, the judge found there was no family unit to be preserved.

MacGregor again appealed. The California Unemployment Insurance Appeals Board (Board) adopted as its own the administrative law judge's decision and statement of facts and reasons. Plaintiff then sought a writ of

---

[1]Statutory references are to the Unemployment Insurance Code unless otherwise noted.

mandate from the Santa Clara Superior Court pursuant to Code of Civil Procedure section 1094.5.

After considering the record of the administrative proceeding, the superior court found plaintiff had good cause for leaving her employment. The court found as facts that MacGregor had lived with Bailey for three years, that she and Bailey had established a family unit with their child, that Bailey had decided to move to New York, and that plaintiff had chosen to leave her employment and relocate to New York in order to maintain and preserve their family unit. The court concluded that these underlying facts established good cause for plaintiff's quitting pursuant to section 1256 and that she was therefore entitled to receive benefits if otherwise qualified.

The court issued a peremptory writ of mandate directing the Board to set aside its decision and to reconsider its action in light of the court's findings of fact and conclusions of law. The Board appealed. While the Board's appeal was pending, this court decided *Norman* v. *Unemployment Insurance Appeals Board, supra,* 34 Cal.3d 1.

In *Norman* we discussed the meaning of "good cause" under section 1256. Section 1256 provides that "an individual is disqualified for unemployment compensation benefits if the director finds that he or she left his or her most recent work voluntarily without good cause or that he or she has been discharged for misconduct connected with his or her most recent work. . . ."

■ Whether or not there is "good cause" within the meaning of section 1256 is a question of law (*Norman* v. *Unemployment Ins. Appeals Bd., supra,* 34 Cal.3d 1, 6) which must be answered in relation to the particular facts of each case. (*Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Bd.* (1960) 178 Cal.App.2d 263, 274 [3 Cal.Rptr. 37].) Good cause may exist for reasons which are personal and not connected to the employment situation (*id.* at p. 272), but those reasons must be imperative and compelling in nature. (*Evenson* v. *Unemployment Ins. Appeals Bd.* (1976) 62 Cal.App.3d 1005, 1016 [133 Cal.Rptr. 488].) ■ Several Courts of Appeal have defined "good cause" as used in section 1256 to mean "such a cause as justifies an employee's voluntarily leaving the ranks of the employed; . . . such a cause as would, in a similar situation, reasonably motivate the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the unemployed. (81 C.J.S., Social Security and Public Welfare, § 167, p. 253.)" (*Evenson* v. *Unemployment Ins. Appeals Bd., supra,* 62 Cal.App.3d at p. 1016; *Zorrero* v. *Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 434 [120 Cal.Rptr. 855].)

Precedent decisions of the Board[2] have long recognized that the circumstances attendant upon a worker's decision to leave employment in order to accompany a spouse and family to a new home may be so compelling as to constitute good cause for quitting within section 1256. Thus, in *In re Dipre* (1976) Cal. Unemp. Ins. App. Bd. Precedent Benefit Dec. No. P-B-230, a husband had decided to return to a former home in Pennsylvania after his wife informed him that she planned to leave California with their three minor children and make her home in Pennsylvania regardless of his desires. The Board determined that the husband acted under compelling circumstances. His decision to leave employment in order to preserve his marriage and the family unit was a reasonable one, which constituted good cause under section 1256.

In 1982 the Legislature added the fourth paragraph to section 1256 which recognizes that the desire to preserve a marital relationship, or a relationship in which marriage is imminent, may constitute good cause within the meaning of the statute.[3] The Legislature explicitly stated that the amendment was intended to overturn the Court of Appeal decision in *Norman* v. *Unemployment Ins. Appeals Bd.* (which had found good cause based on a nonmarital relationship) and to "endorse the policy of the Employment Development Department, as expressed in its regulations, which distinguishes persons who are married or whose marriage is imminent from others in determining whether a person has left his or her most recent work without good cause . . . ." (Stats. 1982, ch. 1073 § 13, pp. 3873-3874.)

The Court of Appeal's decision in *Norman* was vacated when this court granted a hearing. This court's opinion issued subsequent to the amendment of section 1256. While not specifically addressing or construing the newly enacted statutory presumption, the opinion did reach a result consistent with the statute. We found that a claimant who had left California to preserve her relationship with the man she planned to marry had not established good cause. The record contained no indication that the couple's marriage was imminent and lacked sufficient indications of the need to preserve a permanent and lasting familial relationship. Citing a line of appellate decisions declining to equate nonmarital relationships with marriage for all purposes, the *Norman* opinion concluded that "[t]he Legislature's decision to give weight to marital relationships in the determination of 'good cause' supports

---

[2]The Board reviews decisions of administrative referees for inconsistency with statute, established case law, or prior decisions of the Board. It may designate certain decisions as precedent decisions. (§§ 401, 409.)

[3]The fourth paragraph of section 1256 provides: "An individual may be deemed to have left his or her most recent work with good cause if he or she leaves employment to accompany his or her spouse to a place from which it is impractical to commute to the employment."

public policy encouraging marriage and is a reasonable method of alleviating otherwise difficult problems of proof." (34 Cal.3d at p. 8.) "The inevitable questions would include issues such as the factors deemed relevant, the length of the relationship, the parties' eventual plans as to marriage, and the sincerity of their beliefs as to whether they should ever marry." (*Id.* at p. 10.)

Nevertheless, this court explained there was nothing about Norman's lack of a legally recognized marriage which *precluded* her from receiving benefits if she could establish that compelling circumstances made her voluntary leaving "akin to involuntary departure." (*Ibid.*) Using a hypothetical which foresaw the claim now before us, the *Norman* court suggested that some significant factor in addition to the nonmarital relationship might provide the necessary compelling circumstance: "Thus, for example, where there are children of a nonformalized relationship, and an employee leaves his or her position to be with a nonmarital loved one and their children, good cause might be shown." (*Ibid.*)

It is apparent from the *Norman* decision's treatment of the subject that the presumption which attaches to a couple that is legally married is not the exclusive means of demonstrating good cause based on compelling family circumstances. Regulations of the Department itself recognize the "existing or prospective marital status of the claimant" as but one of three kinds of domestic obligations which might compel a person to leave work with good cause. (Cal. Admin. Code, tit. 22, § 1256-9 et seq.)[4]

The decisions of the administrative law judge and the Board in this case rested on the lack of a legally recognized marriage between MacGregor and Bailey, ignoring the existence of any family unit. ■ When reviewing a decision of the Board on a petition for writ of mandate, however, the superior court must exercise its independent judgment on the evidence in the

---

[4]The parties agree that the regulations, which became effective May 18, 1980, are not controlling in this case. They nevertheless provide guidance as to the kinds of familial obligations that the board generally considers compelling. In addition to obligations arising out of the existing or prospective marital status of the claimant, legal or moral obligations relating to the health, care, or welfare of the claimant's family, or to the exercise of parental control over a claimant who is an unemancipated minor may also give rise to a voluntary leaving with good cause. (*Id.*, § 1256-9.) Family is broadly defined to include "the spouse of the claimant, or any parent, child, brother, sister, grandparent, grandchild, son-in-law, or daughter-in-law, of the claimant or of the claimant's spouse, including step, foster, and adoptive relationships, or any guardian or person with whom the claimant has assumed reciprocal rights, duties, and liabilities of a parent-child, or a grandparent-grandchild relationship, whether or not the same live in a common household." (*Ibid.*) Compelling circumstances may be found where a minor child of the claimant requires care and supervision and there is no reasonable alternative (§ 1256-10, subd. (c)(5)) and where there is a need to preserve family unity (§ 1256-10, subd. (c)(6)).

administrative record. (Code Civ. Proc., § 1094.5; *Interstate Brands* v. *Unemp. Ins. App. Bd.* (1980) 26 Cal.3d 770 [163 Cal.Rptr. 619, 608 P.2d 707].) The court may make its own findings and conclusions based on the evidence before it. (*Thomas* v. *California Emp. Stab. Com.* (1952) 39 Cal.2d 501, 504 [247 P.2d 561].) These conclusions will be upheld on appeal if they are supported by substantial evidence. (*Rowe* v. *Hansen* (1974) 41 Cal.App.3d 512, 518-519 [116 Cal.Rptr. 16].)

The evidence here amply supports the trial court's findings that MacGregor had "established a family unit consisting of herself, her fiance and their child" and that she "chose to relocate to New York with her fiance and their child in order to maintain and preserve their family unit." The record shows that MacGregor and Bailey had maintained a common household for over two years prior to the birth of their daughter. When the child was born the parents received her into that home and gave her Bailey's surname. It is clear that both MacGregor and Bailey intend to and do provide a stable and secure home for their daughter.

It is difficult to conceive of a more fundamental familial relationship than one which is created when two parents establish a home with their natural child. According to Black's Law Dictionary, "family" "most commonly refers to group of persons consisting of parents and children; . . ." (5th ed. 1979.) In *Moore Shipbuilding Corporation* v. *Industrial Accidents Commission* (1921) 185 Cal. 200, 207 [196 P.257, 13 A.L.R. 676], this court stated that "family" may "mean different things under different circumstances. The family, for instance, may be . . . a particular group of people related by blood or marriage, or not related at all, who are living together in the intimate and mutual interdependence of a single home or household. . . ." This court has recognized that "the family is the basic unit of our society, the center of the personal affections that ennoble and enrich human life. It channels biological drives that might otherwise become socially destructive; it ensures the care and education of children in a stable environment; it establishes continuity from one generation to another; it nurtures and develops the individual initiative that distinguishes a free people." (*De Burgh* v. *De Burgh* (1952) 39 Cal.2d 858, 863-864 [250 P.2d 598].)

The Legislature has explicitly recognized that the legal relationship between a child and his or her parents is not dependent upon the existence of a marriage between the parents. (See Civ. Code, § 7001 et seq.) Civil Code section 7002 provides: "The parent and child relationship extends equally to every child and to every parent, regardless of the marital status of the parents." Once that relationship is shown to exist, the "rights, privileges, duties, and obligations" of parent and child are conferred. (Civ. Code,

§ 7001.) Sections 7003 and 7004 establish the methods by which a legally recognized relationship of parent and child may be established. Among the conditions which raise a presumption that a man is the natural father of a child is that "he receives the child into his home and openly holds out the child as his natural child." (Civ. Code, § 7004, subd. (a)(4).)

Leanna was only two months old when Bailey decided his father's illness required him to move to New York. The need for MacGregor to follow— which the administrative law judge could not fathom—is in our view manifest. The intimate nature of the family bond among these three individuals would have been forever altered had MacGregor decided that she, or she and Leanna, should not accompany Bailey to New York.

The Board's arguments here, like the administrative decisions below, focus on the lack of a legal marriage relationship between plaintiff and Bailey. The Board urges that leaving work to join a spouse should be deemed good cause only where there is a marriage to be preserved. This rule, according to the Board, is consistent with the public policy favoring marriage and with laws which afford special benefits and protections to that institution. (E.g., Civ. Code, § 242 [duty to support spouse]; Code Civ. Proc., § 1730 et seq. [establishing conciliation procedures]; *Cohen* v. *Cohen* (1946) 73 Cal.App.2d 330, 335-336 [166 P.2d 622] [law will not recognize contract with the object of dissolving marriage].) The rule would also avoid the difficulties and dangers which would accompany a requirement that administrative agencies and the courts make individualized determination of the "true nature" of intimate personal relationships.

This court considered similar arguments in *Norman* v. *Unemployment Ins. Appeals Bd.*, *supra*, 34 Cal.3d 1. There, although we declined to find good cause based solely on a nonmarital relationship in which marriage was not imminent, we explicitly declined to hold that a legal marriage is a prerequisite for establishing good cause where other indices of compelling familial obligations exist. (34 Cal.3d at pp. 9-10.) Today we reaffirm the principle that the lack of a legally recognized marriage does not prevent a claimant from demonstrating that compelling familial obligations provided good cause for leaving employment.[5]

The state's policy in favor of maintaining secure and stable relationships between parents and children is equally as strong as its interest in preserving

---

[5] In light of this decision we need not resolve plaintiff's contention that a nonmarital rule unconstitutionally infringes her right of privacy in the matters of marriage and reproduction.

the institution of marriage. The Legislature has declared that the rights and obligations of parents and children exist regardless of the marital status of the parents. (Civ. Code, § 7002.) The purposes of the conciliation statutes relied on by the Board include the protection of the rights of children as well as the protection of the institution of matrimony. (Code Civ. Proc., § 1730.) The courts have recognized the family as a basic unit of our society. (*De Burgh* v. *De Burgh, supra,* 39 Cal.2d 858, 863-864.)

The problems of proof which concerned this court in the *Norman* case are not substantial in this situation where the basis for the familial relationship is clear and objectively verifiable. Plaintiff and her fiance share a home with their natural child. Both have acknowledged the child as theirs and have assumed the responsibilities of providing for her care and support, as well as the benefits of her company and companionship.

The Board asserts that a claimant who leaves employment to accompany a spouse to a different locality must show that the spouse was forced to establish the new domicile by "compelling circumstances" which would constitute good cause. ██ Prior decisions of the Board recognize, however, that even if one spouse's reason for relocating appears arbitrary, the importance of preserving the marital or familial relationship may provide good cause for the other spouse's decision to follow. (*In re Dipre, supra,* P-B-230.)

██ In this case the decisions of the administrative law judge and the Board conceded that Bailey had a good reason for relocating: the care of his elderly and ill father. This would constitute a compelling circumstance under the Department's own regulations. (22 Cal. Admin. Code., tit. 22, § 1256-11, subd. (c)(2).) The trial court found as matters of fact that Bailey made the decision to move and that plaintiff chose to go with him in order to preserve their family unit. The court's findings are supported by substantial, credible and competent evidence. (*Rowe* v. *Hansen, supra,* 41 Cal.App.3d 512.) The conclusion that MacGregor had "such a cause as would, in a similar situation, reasonably motivate the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the unemployed" is entirely consistent with the laws and public policies of the State of California.

As the record clearly supports the trial court's finding that plaintiff had good cause for leaving work, the judgment is affirmed.

Mosk, J., Kaus, J., Grodin, J., and Lucas, J., concurred.

Bird, C. J., and Broussard, J., concurred in the result.