[Civ. No. 23749. Third Dist., Apr. 29, 1985.]

BOYCE HINMAN et al., Plaintiffs and Appellants, v.
DEPARTMENT OF PERSONNEL ADMINISTRATION et al.,
Defendants and Respondents.

518

COUNSEL

Roberta Achtenberg and Donna J. Hitchens for Plaintiffs and Appellants.

Bernard L. Allamano, Gary P. Reynolds, Linda Stoick, Howard, Rice, Nemerovski, Canady, Robertson & Falk, Therese M. Stewart, Margaret C. Crosby, Alan L. Schlosser, Amitai Schwartz, Donna J. Hitchens, Matthew A. Coles, Robert N. Nakatani, Coles & Nakatani and Douglas Warner as Amici Curiae on behalf of Plaintiffs and Appellants.

Jeffrey L. Gunther, Talmadge R. Jones and Christine A. Bologna for Defendants and Respondents.

OPINION

**REGAN, J.**—In this appeal we consider whether the denial of dental benefit coverage to unmarried partners of homosexual state employees unlawfully discriminates against the employees and violates either the equal protection clause of the California Constitution or an executive order prohibiting employment discrimination based on sexual orientation in state government. Plaintiffs Hinman and Advocates for Gay and Lesbian State Employees (Advocates) claim the State Employees' Dental Care Act (Gov. Code, § 22950, et seq.)[1] and the interpretation given it by the Department of Personnel Administration (DPA) to qualify dependent members of employees' families necessarily excludes same-sex partners from enrollment in the state dental plan. Because they may not marry same-sex partners, plaintiffs claim DPA's classification of family members, particularly spouses, is based not solely on marital status, but also on sexual orientation. Accordingly, they assert strict scrutiny of that classification is required, because classifications based on sexual orientation should be viewed as "suspect."

---

[1]Unless otherwise noted, all statutory references are to the Government Code.

We do not view the Dental Care Act or its interpretation by DPA as establishing *any* classification on the basis of sexual orientation, and thus, we shall not afford a strict scrutiny analysis to this case. We hold denial of dental care benefits to partners of homosexual state employees does not violate the equal protection clause of the California Constitution.

Plaintiffs had filed in the trial court a petition for writ of mandate for declaratory and injunctive relief, seeking a commandment to enroll Hinman's "family partner," and others similarly situated, in the state dental plan. They also sought a permanent injunction requiring DPA to develop an "administrative procedure" to determine eligibility for dental benefits of "family partners" of an unidentified number of male and female homosexual state employees. The trial court sustained DPA's demurrer without leave to amend, finding no violation of equal protection under the California Constitution or Executive Order B-54-79 as a matter of law. The California State Employees' Association and Bay Area Lawyers for Individual Freedom joined plaintiffs as amici curiae in appealing the order sustaining the demurrer.

The instant order is a nonappealable order (Code Civ. Proc., § 904.1), and the record reveals no judgment of dismissal was entered on the demurrer. In the interest of justice and to prevent further delay, we will deem the order sustaining DPA's demurrer to incorporate a judgment of dismissal. Accordingly, the ruling and order sustaining the demurrer without leave to amend is modified by adding a paragraph dismissing the action. (*Bellah* v. *Greenson* (1978) 81 Cal.App.3d 614, 618, fn. 1 [146 Cal.Rptr. 535, 17 A.L.R.4th 1118]; *Nystrom* v. *First Nat. Bank of Fresno* (1978) 81 Cal.App.3d 759, 762-763 [146 Cal.Rptr. 711].) In light of our conclusions herein, we affirm that judgment dismissing the petition.

BACKGROUND

A. *Procedural Background*

The facts are not in dispute. Plaintiff Hinman is an employee of the Employment Development Department (EDD), a state agency. Hinman is a homosexual and, at the time of filing the petition, had lived with Larry Beatty for over 12 years. In their complaint and throughout this proceeding, plaintiffs identify Hinman's homosexual partner as his "mate," "spouse," or "family partner."[2] Hinman and Beatty own their home together, place

---

[2]Hinman identified Beatty as his "family partner" in his dental plan enrollment authorization form. In its ruling, the trial court stated it adopted this nomenclature ". . . to refer to an individual living with a State employee in a 'loving relationship' having many of the attributes of marriage without benefit of the legal status of marriage. . . ." We decline to use the term, as it carries a conclusory implication of family relationship, yet is not established by blood relationship or the operation of law.

their assets in a joint bank account, share the common necessities of life, and are each other's primary beneficiaries in their wills and life insurance policies. Hinman and Beatty have entered into a covenant of mutual economic support and would marry if they were not prohibited from doing so by state law.

On December 7, 1981, plaintiff applied for dental coverage for himself and Beatty under the prepaid group dental plan offered through his state employment. The next day he was informed by the payroll services section of EDD that, based on instructions from DPA, Beatty had been deleted from his dental plan enrollment. On January 29, 1982, plaintiff filed a letter of grievance with DPA complaining of DPA's denial of coverage for Beatty. On September 8, 1982, DPA denied the grievance "on the basis that [the] 'family member' does not qualify as a spouse or dependent under existing contracts or statutes."

Hinman, joined by Advocates, filed the petition for writ of mandate for declaratory relief and injunctive relief on December 29, 1982. DPA responded by way of demurrer and, after a hearing, the parties submitted the matter on the pleadings and supporting papers. The trial court sustained DPA's demurrer without leave to amend.

## B. *Statutory and Administrative Background*

The Governor's reorganization plan No. 1 of 1981, enacted January 1981, established DPA as the agency responsible for managing the nonmerit aspects of the state personnel system, including state employee benefits and the terms and conditions of employment. (Stats. 1981, ch. 230, § 55, pp. 1168-1232.) Section 19815.4, subdivision (g) designates DPA as the Governor's representative for purposes of section 3517, which requires the Governor or his representative "meet and confer in good faith" with recognized employee organizations. That section is part of the State Employer-Employee Relations Act (§ 3512 et seq.) which provides for collective bargaining of certain terms and conditions of state employment.

After meeting and conferring, the Governor's representative [DPA] and the recognized employee organizations are authorized by section 3517.5 to jointly prepare written memoranda of understanding (hereinafter MOU) if agreement is reached. MOU's, including terms governing dental benefits, have been negotiated for the 20 bargaining units represented by exclusive representatives.

In 1980, the Legislature enacted the State Employees' Dental Care Act (the Act). (§§ 22950-22952 (Stats. 1980, ch. 1039, § 1-2, p. 3320), as

amended by §§ 22950-22958 (Stats. 1982, ch. 825, § 1-3, p. 3134).) The statute authorizes the state to negotiate and to contract with insurance carriers for dental care coverage for state employees and annuitants.[3] The Act further provides, however, that the state may enter into such contracts after it negotiates with recognized employee organizations over the terms and conditions to be included in the dental contracts, *if* the Legislature appropriates the necessary funds. (§ 22952.) The Act makes no reference to persons to be covered by the dental plans other than the employee or annuitant. Under provisions of the Act, DPA negotiated with the 20 exclusive representatives and signed MOU's providing for dental coverage.

The initial legislative funding for the state dental plan was obtained in the Budget Act of 1981. (Stats. 1981, ch. 99.) Six months later, negotiations with recognized employee organizations and qualifying dental plan carriers resulted in final dental contracts effective January 1, 1982. Through these negotiations, two insurance carriers were selected to provide dental coverage to rank and file employees, namely, Private Medical Care, Incorporated (PMI) and California-Western States/Trans-America Occidental (Cal-West). Neither of the two contracts provide dental benefits to anyone other than spouses and dependent children of state employees.[4] Dental care under the terms of existing plans, including eligibility for coverage, benefit levels and premiums paid by the employer, continued through fiscal year 1982-1983, funded by the Budget Act of 1982 (Stats. 1982, ch. 326) and following negotiations with exclusive representatives and insurance carriers. Dental care coverage under the same terms of eligibility and benefit levels, but with increased premiums paid by the state employer, was negotiated with the unions and insurers for fiscal year 1983-1984 and funded in the Budget Act of 1983. (Stats. 1983, ch. 324.)

---

[3]Section 22952 provides in part: "The State of California, through the Department of Personnel Administration, . . . may contract, upon negotiations with employee organizations, with carriers for dental care plans for employees and annuitants, . . . [¶] No contract for any dental care plan may be entered into unless funds for a dental care plan contract are appropriated by the Legislature in a subsequently enacted statute."

[4]The PMI contract provides the following pertinent clause: "WHO IS ELIGIBLE? [¶] *Employees* . . . [¶] *Eligible Dependents* Your eligible dependents include your spouse, unless separated or divorced, and unmarried children less than 19 years old. Children up to age 23, if a full-time student, are also eligible (full-time students must be enrolled for 12 units per semester—plan may request verification of full-time enrollment from college registrar). An unmarried child 19 years of age or over may continue to be eligible as a dependent if incapable of self-support because of physical handicap or mental retardation that commenced prior to age 19, provided that the person is legally residing with and dependent upon the eligible employee, and that PMI receives notice of the disability. [¶] If, after enrollment, a spouse or any person becomes a dependent by reason of birth or otherwise, he or she shall become a dependent upon receipt by PMI of notice thereof within thirty (30) days after becoming eligible."

The Cal-West contract provides the following pertinent clause: "WHO IS ELIGIBLE FOR INSURANCE? [¶] . . . Eligible dependents [¶] 1. Spouse [¶] 2. Unmarried children from birth to 23."

In administering the State Dental Plan, DPA has used the definitions of terms found in Public Employees' Medical and Hospital Care Act[5] (§ 22751 et seq.) (hereinafter Health Care Act), including definitions for "employee," "annuitant," and "family member." The Dental Care Act contains no definitions. Instead, the definitions are set forth in the immediately preceding Health Care Act. That act defines "family member" in section 22754, subdivision (f): "'Family member' means an employee's or annuitant's spouse and any unmarried child (including an adopted child, a stepchild, or recognized natural child who lives with the employee or annuitant in a regular parent-child relationship). The board shall, by regulation, prescribe age limits and other conditions and limitations pertaining to unmarried children."

According to the declaration of Julie D. Kerk, chief of the employee compensation branch at DPA, who is responsible for the administration of the state dental plan, the reason for using the same definitions is that both statutes contained identical purpose clauses,[6] and because bids would be solicited for dental plan coverage from insurance carriers currently providing health benefits plan coverage under the Health Care Act. Additionally, Kerk noted all parties participating in the state dental plan, including personnel officers, exclusive employee organizations, the Public Employees Retirement System and the Office of the State Controller, have used the Health Care Act definitions in administering the Dental Care Act.

DISCUSSION

I

A. *Classification of Homosexual Employees*

The sole issue presented is whether denial of dental benefits to unmarried partners of state employees, including those of the same sex, unlawfully discriminates against homosexual employees. The basis of the denial of the governmental benefits here was that Hinman and Beatty were

---

[5]The Public Employees' Medical and Hospital Care Act allows employees or annuitants to enroll in approved health benefits plans, "either as an individual or for self and family. . . ." (§ 22810.) The Dental Care Act, as we discuss *post,* authorizes dental care plans only for "employees and annuitants" and does not include family members as does the Health Care Act. That inclusion has been made by DPA administratively.

[6]Both sections 22752 (Health Care Act) and 22951 (Dental Care Act) read as follows: "It is the purpose of this part: [¶] (a) To promote increased economy and efficiency in the state service; [¶] (b) To enable the State to attract and retain qualified employees by providing [dental care or health benefit] plans similar to those commonly provided in private industry; [¶] (c) To recognize and protect the State's investment in each permanent employee by promoting and preserving good health among state employees."

not married. Pursuant to the contracts for dental benefits, only spouses or unmarried children up to age 23 are eligible to receive the benefits. ■ As there was no allegation and there is no evidence that the denial of benefits was based directly or intentionally on Hinman's sexual orientation, this is a case of alleged under-inclusiveness of governmental regulation or legislation. In such cases, the differentiation of one group from another "similarly situated" becomes the basis of a claim of de facto discrimination. (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].)

Plaintiffs correctly state persons similarly situated with respect to the legitimate purposes of a law deserve like treatment. (*Id.*, at p. 861.) Plaintiffs baldly assert that homosexual state employees with same-sex partners are similarly situated to heterosexual state employees with spouses for the purposes of the Act.

Plaintiffs point to the effect of Civil Code section 4100 as the underlying difficulty in their case. Section 4100 provides in part: "Marriage is a personal relationship arising out of a civil contract between a man and a woman, . . ." (Stats. 1969, ch. 1608, § 8, p. 3314, as amended by Stats. 1977, ch. 339, § 1, p. 1295.) In 1977, the Legislature added the words "between a man and a woman," thus expressly prohibiting homosexuals from marrying same-sex partners. Plaintiffs here are not challenging this statute, and yet its prohibition is the underlying reason for their self-perception as a "suspect classification."

Since a homosexual's same-sex partner can never be a "spouse" by effect of Civil Code section 4100, plaintiffs argue the term "spouse" is not neutral as to homosexuals, and is not merely a classification based on marital status, but one based on sexual orientation. Plaintiffs follow this assertion with their view that strict scrutiny of such a classification is required, because classifications based on sexual orientation should be viewed as "suspect." We disagree, and, as we discuss below, neither the state Constitution's equal protection clause nor the executive order banning employment discrimination against homosexuals by the state provides ground for expanding the benefits at issue here.

■ Article I, section 7, subdivision (a) of the California Constitution guarantees "[a] person . . . may not be denied equal protection of the laws; . . ." Thus, "no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property, and in their pursuit of happiness." (*People* v. *Romo* (1975) 14 Cal.3d 189, 196 [121 Cal.Rptr. 111, 534 P.2d 1015].)

"This principle of 'equal protection' . . . 'does not preclude the state from drawing any distinctions between different groups of individuals' (*In re King* (1970) 3 Cal.3d 226, 232 [90 Cal.Rptr. 15, 474 P.2d 983]), but it does require that, at a minimum, 'persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194]; *Darcy* v. *Mayor etc. of San Jose* (1894) 104 Cal. 642, 645-646 [38 P. 500].)" (*Brown* v. *Merlo, supra,* 8 Cal.3d at p. 861.) The purpose of the clause is to secure every person against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. (*People* v. *Harris* (1960) 182 Cal.App.2d Supp. 837, 841 [5 Cal.Rptr. 852], referring to the U.S. 14th Amendment equal protection clause.) Discrimination in the enforcement or administration of a statute fair on its face is as much a denial of equal protection as is the enactment of a statute which is discriminatory in the first place. (See *Yick Wo* v. *Hopkins* (1885) 118 U.S. 356, 373-374 [30 L.Ed. 220, 227-228, 6 S.Ct. 1064].)

We are presented here with a challenge to the administration of the Act and not to the statute itself. Plaintiffs agree the Act does not classify state employees on the basis of sexual orientation; in fact, it does not even provide for recipients of benefits other than the employee or annuitant. It is DPA's administration of the Act which provides employees' families with dental benefits. It is this administration, and specifically the interpretation used for the term "family member," as defined in the Health Care Act, which plaintiffs claim constitutes purposeful discrimination against homosexual state employees.[7]

The classification or distinction challenged by plaintiffs is not wholly legislative, but based in part on the administrative acts by DPA and in part on the legislative definition of "family member" as including "spouse" which is found in the Health Care Act. (§ 22754, subd. (f).) Underlying the alleged "suspect classification" is the legislative determination that legal marriage is between a man and a woman, as plaintiffs claim they are in a class of persons not allowed to legally marry.

We start our analysis by determining whether there is in fact the "classification" plaintiffs claim exists by virtue of DPA's acts or the statutes

---

[7]We have no occasion here to consider the legality of DPA's action in providing dental benefits to employees' families where the Act does not expressly provide for them. Plaintiffs have not challenged DPA's decision to apply the Act in a similar manner as the Health Care Act, thus providing benefits to children and spouses of employees or annuitants. Plaintiffs are in fact seeking those benefits, but on the basis they should be provided to a different class of persons affiliated with the employee or annuitant.

relied on by DPA. Plaintiffs argue the DPA policy is disproportionate by providing benefits to only the families of heterosexual state employees and never to "families" of homosexual state employees, and thus, discriminates against homosexuals. The distinction plaintiffs argue here is one between heterosexual families and homosexual "families." We are unable to establish the nature of a homosexual "family" on the basis of any natural, intrinsic or legal foundation. The DPA policy, as outlined above, makes a distinction solely on the basis of married and unmarried employees or annuitants, not between heterosexual or homosexual ones. Thus, the threshold premise here, i.e., that there is any classification at all which is the subject of discrimination, eludes us.[8]

The negotiated terms of the state dental plan limit eligibility for benefits of family members, thereby excluding all nonspouses or other unmarried nonchildren, of both the opposite and same sex. Homosexuals are simply a part of the larger class of unmarried persons, to which also belong the employees' filial relations and parents, for example. The terms have the same effect on the entire class of unmarried persons. Rather than discriminating on the basis of sexual orientation, therefore, the dental plans distinguish eligibility on the basis of marriage. There is no difference in the effect of the eligibility requirement on unmarried homosexual and unmarried heterosexual employees.

Thus, plaintiffs are not similarly situated to heterosexual state employees *with* spouses. They are similarly situated to other *unmarried* state employees. Unmarried employees are all given the same benefits; plaintiffs have not shown that unmarried homosexual employees are treated differently than unmarried heterosexual employees.

## B. *Discrimination Based on Marital Status*

■ California courts have held that statutory distinctions based upon marital status need only be *rationally related* to a legitimate state purpose. (*Garcia* v. *Douglas Aircraft Co.* (1982) 133 Cal.App.3d 890, 894 [184 Cal.Rptr. 390]; *Harrod* v. *Pacific Southwest Airlines* (1981) 118 Cal.App.3d 155, 158 [173 Cal.Rptr. 68].) Statutes differentiating on the basis of marriage do not invoke strict judicial scrutiny of their constitutionality, since the class of unmarried persons is not "suspect." (*Garcia* v.

---

[8]As we do not find any classification based on homosexuality in this legislative and administrative scheme, we need not discuss whether sexual orientation ought to be the basis of a suspect class requiring strict scrutiny under the equal protection clause. *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458 [156 Cal.Rptr. 14, 595 P.2d 592], cited by plaintiffs, did not establish homosexuality as a suspect class and is inapposite to the present case.

*Douglas Aircraft Co., supra,* at p. 894.) Furthermore, denial of statutory benefits on the basis of marital status does not violate the fundamental rights of unmarried persons. (*Norman* v. *Unemployment Ins. Appeals Bd.* (1983) 34 Cal.3d 1, 9 [192 Cal.Rptr. 134, 663 P.2d 904]; *MacGregor* v. *Unemployment Ins. Appeals Bd.* (1984) 37 Cal.3d 205 [207 Cal.Rptr. 823, 689 P.2d 453].)

The state has a legitimate interest in promoting marriage. (*Norman* v. *Unemployment Ins. Appeals Bd., supra,* at p. 9.) While promoting marriage is not one of the express purposes of the Act, it is not necessary that the statutory scheme or policy directly promote the state interest in marriage. Instead, the statutory scheme or policy need only be reasonably related to that interest. (*Garcia* v. *Douglas Aircraft Co., supra,* 133 Cal.App.3d at p. 894.)

■ The state's public policy favoring marriage is promoted by conferring statutory rights upon married persons which are not afforded unmarried partners. (*Norman, supra,* at pp. 9-10.) The *Norman* decision upheld the constitutionality of the state unemployment compensation statutory benefits scheme which had different effects on unmarried partners than on married persons since "[u]nderlying the unemployment compensation scheme is the state's legitimate interest in promoting marriage." (*Ibid.*)

The *Norman* court reaffirmed "our recognition of a strong public policy favoring marriage. (*Marvin* [v. *Marvin* (1976)] 18 Cal.3d [660,] 684 [134 Cal.Rptr. 815, 557 P.2d 106].) No similar policy favors the maintenance of nonmarital relationships. . . . In the absence of legislation which grants to members of a nonmarital relationship the same benefits as those granted to spouses, no basis exists in this context for extending to nonmarital relations the preferential status afforded to marital relations." (*Norman, supra,* at p. 9.) Referring to Ms. Norman, the Supreme Court stated: "[¶] Plaintiff also asserts a constitutional claim, arguing that to deny her the benefits accorded to those who are married violates her right of privacy and freedom of association, citing *City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219]. In essence, plaintiff's argument is that nonmarried persons must be afforded all the rights and benefits extended to married persons. We do not agree. Underlying the unemployment compensation scheme is the state's legitimate interest in promoting marriage. Unlike the plaintiffs in *City of Santa Barbara,* plaintiff herein has not been denied the right to live with the person of her choice, nor has she been denied benefits which she might otherwise enjoy but for her unmarried state." (*Ibid.*)

■ Although the express purpose of the Act is to promote the health of state employees, the terms of the state dental plans which restrict cov-

erage to spouses and family of employees and annuitants are reasonably related to the state's interest in promoting marriage. (*Garcia* v. *Douglas Aircraft Co., supra,* at p. 894; *Harrod* v. *Pacific Southwest Airlines, Inc., supra,* at p. 158; *Norman* v. *Unemployment Ins. Appeals Bd., supra,* at p. 7.)

Furthermore, the use of the definition of "family member" under the Health Care Act is a reasonable means of administering the dental benefit program. In addressing the state unemployment compensation scheme, the California Supreme Court observed: "[¶] Recognizing and favoring those with established marital and familial ties not only furthers the state's interest in promoting such relationships but assures a more readily verifiable method of proof. . . . [N]umerous problems of standards and difficulties of proof would arise if we imposed upon an administrative agency the function of deciding which relationships merited treatment equivalent to the treatment afforded those with formal marriages. The inevitable questions would include issues such as the factors deemed relevant, the length of the relationship, the parties' eventual plans as to marriage, and the sincerity of their beliefs as to whether they should ever marry. The potential for administrative intrusions into rights of privacy and association would be severe if agencies bore the burden of ferreting out the 'true depth' and intimacy of a relationship in order to determine whether the existence and nature of the relationship was the equivalent of marriage." (*Norman* v. *Unemployment Ins. Appeals Bd., supra,* at p. 10.)

The same difficulties would attend a dental benefits scheme allowing enrollment of homosexual partners. The responsible agencies would have to establish standards which would reach the very foundations of the privacy rights of both homosexual partners in order to properly determine whether the relationship meets some arbitrary standard equating with marriage, and still exclude other unmarried nonspouses, such as roommates, acquaintances or companions. Additionally, it would bear down unfairly on those unmarried homosexual state employees who would prefer to keep their sexual orientation a private matter. (Cf. *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co., supra,* 24 Cal.3d at p. 488.) The great potential for different opinions by the employer, insurers and unions as to who is an eligible homosexual partner could expose all parties to allegations of discriminatory treatment and the making public of any administrative examination of the sexual relationships involved.[9]

---

[9]The trial court also relied on the utility of the marriage criteria in concluding "there are no 'less offensive alternatives.' " The court used the criteria outlined in *Bagley* v. *Washington Township Hospital Dist.* (1966) 65 Cal.2d 499, 505-507 [55 Cal.Rptr. 401, 421 P.2d 409], referring to the constitutionality of a state scheme conferring benefits. (See also *Committee to Defend Reproductive Rights* v. *Myers* (1981) 29 Cal.3d 252 [172 Cal.Rptr. 866,

The California Supreme Court has recently held a worker who voluntarily left her employment to accompany her fiance to another state was entitled to unemployment benefits. (*MacGregor* v. *Unemployment Ins. Appeals Bd.*, *supra,* 37 Cal.3d at p. 213.) The court held, "[A]lthough we declined [in *Norman* v. *Unemployment Ins. Appeals Bd., supra,* 34 Cal.3d 1] to find good cause based solely on a nonmarital relationship in which marriage was not imminent, we explicitly declined to hold that a legal marriage is a prerequisite for establishing good cause where other indices of compelling familial obligations exist. (34 Cal.3d at pp. 9-10.) Today we reaffirm the principle that the lack of a legally recognized marriage does not prevent a claimant from demonstrating that compelling familial obligations provided good cause for leaving employment. [Fn. omitted.]" (*Ibid.*)

*MacGregor* is expressly distinguishable from the instant case as the court there based its conclusion on the "state's policy in favor of maintaining secure and stable relationships between *parents* and *children*" (italics added; *id.,* at 37 Cal.3d p. 213), citing Civil Code section 7002 and the purposes of the conciliation statutes protecting the rights of children.

While discrimination by employers on the basis of marital status is prohibited in section 12940, subdivision (a), there is an express provision in subdivision (a)(3)(ii) of that same section which states in part: "Nothing in this part relating to discrimination on account of marital status shall . . . prohibit bona fide health plans from providing additional or greater benefits to employees with dependents than to those employees without or with fewer dependents." Regulations interpreting the above provision state: "[¶] (A) *Bona fide fringe benefit plans or programs may provide benefits to an employee's spouse or dependents;* [¶] (B) *Such bona fide fringe benefit plans or programs may decline to provide benefits to any individual who is not* one of the following: an employee of the employer, *a spouse* of an employee of the employer, or *a dependent* of an employee of the employer." (Italics added; Cal. Admin. Code, tit. 2, § 7292.6.)

The eligibility of spouses and unmarried children for dental plan coverage is a "bona fide fringe benefit provision." In *United Air Lines, Inc.* v. *McMann* (1977) 434 U.S. 192, 202-203 [54 L.Ed.2d 402, 412-413, 98 S.Ct. 444], the United States Supreme Court held that "bona fide" status of a plan or system under attack is determined by whether the primary purpose at issue was adopted before the passage of the statute. If so, an intent to discriminate will not be implied and the employer is entitled to a

---

625 P.2d 779, 20 A.L.R.4th 1118].) We decline to use the *Bagley-Myers* test because it presumes the existence of fundamental rights. This is not a case where the exercise of protected constitutional rights is put in issue by the governmental statutory or administrative scheme.

presumption of validity. In the instant case, the use of the definition "family member" to include coverage of spouses and unmarried children under state-funded health benefit plans dated back to 1961 (§ 22754 (Stats. 1961, ch. 1236)), whereas the marital status criteria was not added to categories protected by section 12940 until 1976. (Stats. 1976, ch. 1195; *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co., supra,* 24 Cal.3d at p. 490.) Accordingly, as a matter of federal and state law, dental benefits under the state plans qualify as bona fide fringe benefits exempted from marital status discrimination.

## II

Plaintiffs claim Executive Order B-54-79 provides a ground for relief. That order provides the state shall not "discriminate in state employment against any individual solely upon that individual's sexual preference."[10] The trial court stated in its ruling that the order "bans purposeful discrimination in State employment 'solely' on the basis of sexual preference. On its face, by the terms of its prefatory and mandatory language, the executive order does not purport to go beyond that basic proposition."

We agree with the trial court and find nothing in the order which applies to alleged differences in benefit coverages. Plaintiff has not been discriminated against in state employment. He has been an outstanding state employee for 12 years. He does not contend he has been denied promotional opportunities or that he has been harassed at work because of his sexual orientation.

There are no differences in dental benefits given homosexual and heterosexual unmarried state employees, and thus, not only is there no "employment" discrimination based "solely" upon sexual preference, but there is no discrimination at all. The executive order provides no ground for plaintiffs' claims.

---

[10]The complete text of Executive Order B-54-79, adopted April 4, 1979, is as follows: "WHEREAS, Article I of the California Constitution guarantees the inalienable right of privacy for all people which must be vigorously enforced; and [¶] WHEREAS, government must not single out sexual minorities for harassment or recognize sexual orientation as a basis for discrimination; and [¶] WHEREAS, California must expand its investment in human capital by enlisting the talent of all members of society; [¶] Now, THEREFORE, I, Edmund G. Brown, Jr., Governor of the State of California, by virtue of the power and authority vested in me by the Constitution and statutes of the State of California, do hereby issue this order to become effective immediately: [¶] The agencies, departments, boards and commissions within the Executive Branch of the state government under the jurisdiction of the Governor shall not discriminate in state employment against any individual based solely upon the individual's sexual preference. Any alleged acts of discrimination in violation of this directive shall be reported to the State Personnel Board for resolution."

## Conclusion

We hold there is no discrimination against plaintiffs here because DPA did not distinguish or classify plaintiffs to begin with. Plaintiffs argue "the purposes of the Dental Care Act [reveal] no reason to distinguish between heterosexual and homosexual state employees." The proposition would be wholly sound if in fact the Act did distinguish between such employees. It does no such thing. As applied, the Act distinguishes between married and unmarried employees. As we have discussed, that distinction is rationally related to a legitimate state purpose, the state's interest in promoting marriage. As counsel for DPA correctly points out, plaintiffs' real quarrel is with the California Legislature if they wish to legitimize the status of a homosexual partner. Plaintiffs may achieve the reform they seek here only by attacking Civil Code section 4100, which defines marriage to be a civil contract "between a man and a woman." We cannot change that law here.

The judgment of dismissal is affirmed.

Puglia, P. J., concurred.

**BLEASE, J.**—I concur in the result.

Plaintiffs claim that the dental care plans for state employees unlawfully discriminate against the unmarried "family" partners of homosexual state employees by denying them benefits. The plans do not facially single out homosexuals since they exclude from benefits all but the families of married employees. Manifestly, this class is not restricted to homosexuals. It includes, for example, the unmarried "family" partners of heterosexual state employees. But, the plaintiffs respond, heterosexuals can gain entry to the favored class by getting married, a legal relationship denied homosexuals. That makes marriage the essence of the matter. It also compels the result, for *Norman* v. *Unemployment Ins. Appeals Bd.* (1983) 34 Cal.3d 1 [192 Cal.Rptr. 134, 663 P.2d 904] constitutionally sanctions the state's right to single out the marriage relationship for benefits. Nothing more need be said.

A petition for a rehearing was denied May 23, 1985, and appellants' petition for review by the Supreme Court was denied August 15, 1985. Bird, C. J., and Grodin, J., were of the opinion that the petition should be granted.