**Mary K. ROSS, Plaintiff–Appellee,**

v.

**DENVER DEPARTMENT OF HEALTH AND HOSPITALS; Thomas Moe, in his capacity as Manager and Chief Executive Officer of the Denver Department of Health and Hospitals; the City and County of Denver, a municipal corporation; Wellington Webb, in his capacity as Mayor of the City of Denver; the**

**Denver Career Service Board; Robert Braun, Dianne Nino, Connie Bragg, Howard Rosenberg and Alfred Wood, in their capacities as members of the Denver Career Service Board; and Margot Jones, in her capacity as a Hearing Officer for the Denver Career Service Authority, Defendants–Appellants.**

No. 93CA0014.

Colorado Court of Appeals, Div. I.

April 7, 1994.

Rehearing Denied May 12, 1994.

Certiorari Denied Nov. 7, 1994.

Hawley & VanderWerf, P.C., Lino S. Lipinsky de Orlov, Denver, American Civil Liberties Union of Colorado, David H. Miller, Denver, American Civil Liberties Foundation, William B. Rubenstein, Ruth E. Harlow, New York City, for plaintiff-appellee.

Daniel E. Muse, City Atty., J. Wallace Wortham, Jr., Asst. City Atty., Denver, for defendants-appellants.

Opinion by Judge KAPELKE.

This is an appeal from a judgment of the district court reversing the determination of the Denver Career Service Board (Board) that plaintiff, Mary K. Ross, was not entitled to receive family sick leave benefits to care for her same-sex domestic partner. We reverse and remand with directions.

Ross was formerly employed as a social worker by the Department of Health and Hospitals (Department). In December 1991, she requested family sick leave benefits for the three days she took off work to care for her domestic partner. The Department denied Ross' request because the domestic partner was not a member of Ross' immediate family, as defined by the Career Service Authority Rules (the Rules).

Ross appealed the Department's denial of her request for sick leave to the Career Service Authority. A hearings officer found that the definition of "immediate family" contained in the Rules resulted in Ross' being discriminated against on the basis of her sexual orientation in violation of the Career Service Authority's anti-discrimination rule. Based on that finding, the hearings officer ordered the Department to grant Ross' request for family sick leave benefits.

The Department appealed the hearings officer's decision to the Board, which reversed the hearings officer's decision because it was based on an erroneous interpretation of the Rules.

Ross filed a complaint in the district court seeking review of the Board's decision pursuant to C.R.C.P. 106(a)(4) as well as declaratory relief. The district court reversed the Board's decision and reinstated the order of the hearings officer.

I.

Defendants contend that the district court erred in ruling that the Department's denial of sick leave benefits violated Career Service Authority (C.S.A.) Rule 19–10(c). We agree.

The eligibility for sick leave benefits to take care of other persons is prescribed in C.S.A. Rule 11–32, which provides, in pertinent part, that "sick leave may be used ... for necessary care and attendance during sickness ... of a member of the employee's immediate family."

The term "immediate family" is defined in C.S.A. Rule 1 as follows:

Husband, wife, son, daughter, mother, father, grandmother, grandfather, brother, sister, son-in-law, daughter-in-law, mother-in-law, father-in law, brother-in-law, sister in law.

As Ross acknowledges, a same-sex partner does not fall within the agency's definition of "immediate family." Nevertheless, before both the hearings officer and the district court, Ross successfully argued that the family definition in C.S.A. Rule 1 has been superseded and, in effect, invalidated by the agency's promulgation of C.S.A. Rule 19–10(c), which provides as follows:

The following administrative actions relating to personnel matters shall be subject to appeal: .... c) Discriminatory actions: any action of any officer or employee resulting in alleged discrimination because of race, color, creed, national origin, sex, age, political affiliation, or sexual orientation.

Thus, the dispositive issues are whether C.S.A. Rule 19–10(c) superseded the definition of "immediate family," and whether the denial of sick leave benefits to Ross was an action resulting in discrimination because of her sexual orientation.

At the outset, we note that the standard of review in a C.R.C.P. Rule 106(a)(4) proceeding is limited to a determination of whether the administrative agency or officer

exceeded its jurisdiction or abused its discretion. *Ross v. Fire & Police Pension Ass'n,* 713 P.2d 1304 (Colo.1986).

■ An administrative board's findings may be express or implied. The absence of specific findings is not fatal to an administrative board's decision if there is support in the record for the decision, and it adequately apprises a reviewing court of the basis for the ruling. *See Burns v. Board of Assessment Appeals,* 820 P.2d 1175 (Colo.App. 1991); *Hudspeth v. Board of County Commissioners,* 667 P.2d 775 (Colo.App.1983). The Board's decision here, although it contains only two findings, nevertheless adequately apprises us that it is based on the Board's interpretation of the Rules and their application to the evidence in the record.

■ As a general principle, courts defer to the interpretation of an administrative rule or regulation by the agency charged with its administration. *Hargett v. Director, Division of Labor,* 854 P.2d 1316 (Colo.App. 1992); *see also Van Pelt v. State Board for Community Colleges & Occupational Education,* 195 Colo. 316, 577 P.2d 765 (1978). Under the charter of the City and County of Denver, it is the Board which both promulgates and administers the Career Service Authority Rules and whose interpretation is therefore entitled to deference. Denver City Charter C 5.25(3) and (6). The Board itself apparently concluded that the adoption of C.S.A. Rule 19–10(c) relating to nondiscrimination by reason of sexual orientation was not intended to supersede or nullify the definition of "immediate family" as contained in C.S.A. Rule 19–10(c).

The mere fact that Rule 19–10(c) was promulgated later than the C.S.A. Rule 1 definition does not, of course, mandate a conclusion that it had a superseding effect with respect to determining who is to be deemed an "immediate family" member for the purposes of sick leave. Ross has cited no legislative history to demonstrate that this was the intent of the Board.

■ When interpreting two statutory or regulatory sections, we must attempt to harmonize them in order to give effect to their purposes. *See Ragsdale Bros. Roofing, Inc.*

*v. United Bank,* 744 P.2d 750 (Colo.App. 1987); *Ortega v. Industrial Commission,* 682 P.2d 511 (Colo.App.1984). If possible, the provisions should be reconciled to uphold the validity of both. *Cooley v. Big Horn Harvestore Systems,* 813 P.2d 736 (Colo.1991).

■ Furthermore, administrative rules and regulations are presumed valid and will not be struck down on review unless the challenging party has demonstrated that the rule or regulation is invalid beyond a reasonable doubt. *Civil Rights Commission v. Travelers Insurance Co.,* 759 P.2d 1358 (Colo.1988); *Barr Lake Village Metropolitan District v. Colorado Water Quality Control Commission,* 835 P.2d 613 (Colo.App.1992). Ross has not met this burden.

There is no evidence that Ross' employer singled her out and treated her differently than it would have treated a similarly situated heterosexual employee. Nor is there any evidence that the Department's decision to deny Ross' request for sick leave was motivated by discriminatory animus. Accordingly, the Board properly based its decision on an interpretation of the rule itself.

We conclude that the Board's interpretation of its rules was reasonable and that the regulatory definition of "immediate family" does not impermissibly discriminate against Ross by reason of her sexual orientation. The definition in the rule applies equally to heterosexual and homosexual employees and thus does not discriminate on the basis of sexual orientation.

A homosexual employee is not precluded from enjoying family sick leave benefits. He or she may take family sick leave to care for a son, daughter, mother, father, grandmother, grandfather, brother, sister, son-in-law, daughter-in-law, mother-in-law, father-in-law, brother-in-law, or sister-in-law.

The only portion of the definition of "immediate family" that arguably affects homosexuals differently is the language allowing an employee to take family sick leave to care for a husband or wife. This portion of the rule does not differentiate between heterosexual and homosexual employees but rather between married and unmarried employees.

Ross was not denied family sick leave benefits to care for her same-sex partner because she is homosexual. An unmarried heterosexual employee also would not be permitted to take family sick leave benefits to care for his or her unmarried opposite-sex partner. Thus, the rule does not treat homosexual employees and similarly situated heterosexual employees differently. *See Hinman v. Department of Personnel Administration,* 167 Cal.App.3d 516, 213 Cal.Rptr. 410 (1985); *Phillips v. Wisconsin Personnel Commission,* 167 Wis.2d 205, 482 N.W.2d 121 (1992).

In *Hinman v. Department of Personnel Administration, supra,* the plaintiff was a homosexual employee who challenged an administrative denial of dental benefits to his same-sex partner. His contention, like Ross' here, was that the state's definition of "family member" for determining eligibility for dental benefits improperly failed to include same-sex partners and that the denial of benefits ran athwart of the California Constitution and an executive order prohibiting employment discrimination based on sexual orientation in state government. We find the court's analysis both persuasive and apposite to the situation here:

> Rather than discriminating on the basis of sexual orientation, therefore, the dental plans distinguish eligibility on the basis of marriage. There is no difference in the effect of the eligibility requirement on unmarried homosexual and unmarried heterosexual employees.
>
> Thus, plaintiffs are not similarly situated to heterosexual state employees with spouses. They are similarly situated to other unmarried state employees. Unmarried employees are all given the same benefits; plaintiffs have not shown that unmarried homosexual employees are treated differently than unmarried heterosexual employees.

*Hinman v. Department of Personnel Administration, supra* 213 Cal.Rptr. at 416.

The court in *Phillips v. Wisconsin Personnel Commission, supra,* undertook a similar analysis. There, a state employee contended that the agency's denial of health insurance coverage for her lesbian companion violated the Wisconsin Fair Employment Act which prohibits discrimination based on, among other things, sexual orientation.

The *Phillips* court construed the rule defining "dependents," which did not include same-sex partners, to be compatible with the anti-discrimination order based upon a finding that the differentiation turned on marital status rather than sexual orientation. "[T]he challenged ... rule distinguishes between married and unmarried employees, not between homosexual and heterosexual employees." *Phillips v. Wisconsin Personnel Commission, supra,* 482 N.W.2d at 127.

In both *Hinman* and *Phillips, supra,* the courts emphasized that, absent a finding of statutory or constitutional violation, the decision to extend various employee benefits to same-sex partners or, for that matter, to unmarried opposite-sex partners, was one properly within the province of the legislature rather than the courts. We concur in that conclusion.

■ We recognize that under current Colorado law, a homosexual's same-sex partner cannot be a "spouse" and therefore cannot be considered part of the partner's "immediate family" under the present definition in C.S.A. Rule 1. *See* § 14–2–104, C.R.S. (1987 Repl. Vol. 6B). Ross urges that her inability to marry her same-sex partner thus distinguishes her situation from that of an unmarried heterosexual employee. That distinction, however, does not alter our conclusion that the Career Service Rules do not discriminate on the basis of sexual orientation. In this regard, Ross' concern is with a perceived unfairness of the state's marital laws. The decision to change the marriage laws to permit same-sex marriages, however, is a matter for the legislature, not the courts.

■ Similarly, the definition of "family" is a policy question entrusted to the political branches of government, and we have no judicial authority to substitute our political judgments for those of the other branches. *See Immigration & Naturalization Service v. Hector,* 479 U.S. 85, 107 S.Ct. 379, 93 L.Ed.2d 326 (1986); *Fiallo v. Bell,* 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977).

The Career Service Authority rule contains an exhaustive listing of the categories of persons for whose care a Denver employee may obtain sick leave time. That rule could, of course, be amended to include nonmarital domestic partners.

Other cities have adopted sick leave rules which expressly cover care for unmarried domestic partners. *See* Note, *A More Perfect Union: A Legal and Social Analysis of Domestic Partnership Ordinances*, 92 Colum.L.Rev. 1164, 1190 (fns. 125, 128, 129) (1992).

Ross relies on *Braschi v. Stahl Associates Co.*, 74 N.Y.2d 201, 544 N.Y.S.2d 784, 543 N.E.2d 49 (1989), in urging us to adopt a more expansive, sociologically based definition of "family." However, the critical distinction here is that the Career Service Authority has already formulated a definition, while in *Braschi* there were no statutory or regulatory guidelines. The New York Court of Appeals therefore had to supply its own judicial meaning of that term.

Unlike the New York court, we are not free to design our own definition based upon what might be our perception of a contemporary family. Nor are we bound, as Ross contends, to adhere to the definition set forth in the testimony of the expert witness on families who testified before the hearings officer. If the agency definition is rational and valid, as we determine it is here, we must apply its plainly worded provisions.

■ We conclude that the application of C.S.A. Rule 1 to exclude sick leave for Ross to care for her domestic partner was not an action resulting in discrimination because of sexual orientation. As a corollary, we find that C.S.A. Rule 19–10(c) did not, and was not intended to, supersede or invalidate the definition of "immediate family" in C.S.A. Rule 1. Therefore, the Board did not act arbitrarily and capriciously or contrary to law in denying Ross the requested sick leave benefits.

## II.

■ Ross contends that C.S.A. Rule 1 violates the equal protection and due process guarantees of the Colorado and United States Constitutions because it creates a classification of persons who are denied sick leave benefits on the basis of sexual orientation. We disagree.

■ The district court did not consider Ross' constitutional claims. We nevertheless address them because the constitutionality of an administrative rule is a legal question, and because considerations of judicial efficiency and economy militate in favor of our disposing of them, rather than remanding them to the district court. *See Veterans of Foreign Wars v. Steamboat Springs*, 195 Colo. 44, 575 P.2d 835 (1978).

■ An administrative rule is presumed constitutional, and the burden falls on the challenger to establish its unconstitutionality beyond a reasonable doubt. *Bath v. Department of Revenue*, 758 P.2d 1381 (Colo.1988).

■ The equal protection and due process guarantees of the United States and Colorado Constitutions require like treatment of persons who are similarly situated. *Bath v. Department of Revenue, supra.* Because equal protection and due process are denied only when a law has a special impact on less than all the persons subject to its jurisdiction, we must first determine whether Ross was treated differently than other, similarly situated employees. If she was not treated differently, and if the Rule does not create any forbidden classifications, her constitutional challenges must fail. *See Bath v. Department of Revenue, supra.*

As we discussed above, Ross' application for family sick leave benefits was denied not because of her sexual orientation, but because the person for whom she provided care was not within the definition of "immediate family" under the Career Service Authority rules. Ross is thus in the same situation, and was treated the same, as all unmarried heterosexual men and women. The rule does not create a forbidden classification that results in Ross' being discriminated against on the basis of her sexual orientation. *See Hinman v. Department of Personnel Administration, supra; Phillips v. Wisconsin Personnel Commission, supra.*

Because the rule does not classify or differentiate on the basis of sexual orientation, we conclude that Ross has not established a claim of denial of equal protection or due process. *See Bath v. Department of Revenue, supra; Phillips v. Wisconsin Personnel Commission, supra.*

The judgment of the district court is reversed, and the cause is remanded with instructions to reinstate the order of the Board determining that Ross was not entitled to the requested sick leave benefits.

STERNBERG, C.J., and ROY, J., concur.