[No. C010475. Third Dist. May 29, 1992.]

LARRY BEATY et al., Plaintiffs and Appellants, v.
TRUCK INSURANCE EXCHANGE, Defendant and Respondent.

**COUNSEL**

Feldman, Waldman & Kline, Paul J. Dion, Maureen A. Sheehy, Steven D. Rathfon and Joyce M. Norcini for Plaintiffs and Appellants.

Waldman, Graham & Chuang, Waldman & Chuang and Craig H. Bell for Defendant and Respondent.

**OPINION**

**PUGLIA, P. J.**—The issue presented is whether an insurer violates the Unruh Civil Rights Act (Civ. Code, § 51 et seq., hereafter referred to as the Unruh Act) when it refuses to offer a couple cohabitating in a homosexual relationship the same insurance policy and at the same premium it regularly offers to married couples. Plaintiffs Larry Beaty and Boyce Hinman applied to defendant Truck Insurance Exchange for a joint umbrella liability insurance policy. Defendant denied the application because joint umbrella policies are issued only to married couples. Defendant offered instead to issue each plaintiff individual umbrella coverage. Plaintiffs refused because they wanted a joint policy at the same premium as would be charged a married couple.

Plaintiffs brought suit claiming, inter alia, defendant's refusal to issue them a joint umbrella policy under the same terms and conditions as defendant offers to married couples constitutes unlawful discrimination in violation of the Unruh Act. The trial court sustained defendant's demurrer without leave to amend and entered judgment of dismissal.

On appeal, plaintiffs reiterate their claim defendant violated the Unruh Act by unlawfully discriminating against them on the basis of (1) sexual orientation and (2) marital status. We shall reject plaintiffs' contentions and affirm the judgment.

I

For purposes of this appeal, we accept as true all facts properly alleged in the complaint. (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 213-214 [197 Cal.Rptr. 783, 673 P.2d 660].) Plaintiffs are a homosexual couple who have lived together and shared the common necessities of life for approximately 18 years. For the past eight years plaintiffs have owned a home as joint tenants. They maintain a joint credit card account and a joint bank account, and jointly own two cars and the furnishings in their home. Plaintiffs each have wills and life insurance policies naming the other as primary beneficiary. They have also been issued joint homeowners and automobile insurance policies by defendant.

In February 1986, plaintiffs applied to defendant for a joint umbrella liability insurance policy in the amount of $1 million.[1] This policy was sought to provide plaintiffs with additional liability coverage over and above that provided by their existing homeowners and automobile policies. Defendant refused to issue plaintiffs a joint umbrella policy for a single premium because such policies are issued only to married couples. Instead, defendant offered plaintiffs separate umbrella policies, each with its own premium. Plaintiffs refused the offer.

In July 1988, plaintiffs requested a ruling from the California Department of Insurance (Department) whether defendant's refusal to issue them a joint umbrella policy violated sections 679.71 and 1852 of the Insurance Code. In March 1989, the Department informed plaintiffs no action would be taken on their request and plaintiffs were free to "to pursue any legal remedies available" to them.

In September 1989, plaintiffs filed their first amended complaint (complaint) in superior court seeking damages and injunctive and declaratory relief. Plaintiffs asserted the refusal to issue them a joint umbrella policy violated (1) the Unruh Act; (2) section 679.71 of the Insurance Code, which bars an insurer from discrimination in the issuance of policies; and (3) section 1861.05 of the Insurance Code, which bars discrimination in the setting of rates for insurance policies.

---

[1] "[Umbrella liability policies] are policies of insurance sold at comparatively modest cost to pick up where primary coverages end, in order to provide an extended protection up to one million, five million, ten million, or more. It gives a financial security, as well as peace of mind, to the individual purchasing such coverage who is hopeful that he will never be involved in any substantial claim or lawsuit, but, if he is, is desirous of not losing the security it may have taken a lifetime to acquire." (8A Appleman, Insurance Law and Practice (rev. 1981) § 4909.85.)

Defendant demurred to plaintiff's complaint on various grounds, including failure to exhaust administrative remedies, the Insurance Code offered plaintiffs their exclusive remedy, and discrimination on the basis of marital status is not barred by the Unruh Act. The trial court sustained the demurrer without leave to amend "on whatever grounds are available to uphold [the court's ruling] . . . ." A judgment was entered dismissing the action in its entirety.

On appeal plaintiffs argue only that defendant's refusal to issue them a joint umbrella policy constitutes arbitrary and unlawful discrimination within the meaning of the Unruh Act. For the reasons which follow, we shall hold plaintiffs have not stated and cannot state a cause of action as a matter of law.[2]

## II

At the outset, we note this case bears a remarkable similarity to *Hinman* v. *Department of Personnel Admin.* (1985) 167 Cal.App.3d 516 [213 Cal.Rptr. 410] (hereafter cited as *Hinman*). This similarity is hardly coincidental, as the plantiffs in *Hinman*—Boyce Hinman and Larry Beaty—are the plaintiffs in the instant action.

At issue in *Hinman* was whether the denial to a cohabitant in a homosexual relationship with a state employee of dental insurance coverage under that employee's group policy unlawfully discriminated against such employee in violation of the equal protection clause of the state Constitution. Hinman, a state employee, applied for dental coverage for himself and for Beaty under the prepaid group plan offered through Hinman's employment. When coverage for Beaty was denied, Hinman and Beaty brought suit against the Department of Personnel Administration. They charged the refusal to provide coverage to Beaty constituted discrimination on the basis of sexual orientation and marital status.

We rejected these claims. (*Hinman, supra,* 167 Cal.App.3d at pp. 523-531.) No evidence was presented showing the denial of coverage to Beaty was on the basis of his or Hinman's sexual orientation. Indeed, the record in that case revealed all unmarried employees received identical treatment. The distinction was simply "on the basis of married and unmarried employees . . . not between heterosexual or homosexual ones." (167 Cal.App.3d at pp. 525-526.)

With regard to the claim the denial of coverage was based on marital status in violation of the equal protection clause, we noted statutory distinctions based upon marital status need only be rationally related to a legitimate

---

[2]Defendant requests we take judicial notice of various items. We deem it unnecessary to take judicial notice of the items specified and the requests are therefore denied.

state purpose. (167 Cal.App.3d at p. 526.) Given the state's legitimate interest in promoting marriage, and noting that interest is furthered by conferring statutory rights upon married persons which are not afforded unmarried partners, we had no difficulty in upholding the decision of the Department of Personnel Administration denying benefits to Beaty. (*Id.* at pp. 526-529.)

Plaintiffs assert that because *Hinman* turned upon the interpretation of constitutional law, i.e., the equal protection clause of the state Constitution, while the instant case involves interpretation of the Unruh Act, *Hinman* is "entirely irrelevant to the legal issues raised here." Plaintiffs are entirely free to change legal theories. As we explain, however, plaintiff's change of legal theory does not effect a different result.

## III

■ The decisions hold the Unruh Act forbids discrimination against individuals on the basis of sexual orientation.[3] (E.g., *Rolon* v. *Kulwitzky* (1984) 153 Cal.App.3d 289, 292 [200 Cal.Rptr. 217]; *Curran* v. *Mount Diablo Council of the Boy Scouts* (1983) 147 Cal.App.3d 712 [195 Cal.Rptr. 325, 38 A.L.R.4th 607]; *Hubert* v. *Williams* (1982) 133 Cal.App.3d Supp. 1, 5 [184 Cal.Rptr. 161]; see also *Stoumen* v. *Reilly* (1951) 37 Cal.2d 713, 716-717 [234 P.2d 969].) In their complaint plaintiffs charged "[defendant's] denial of joint coverage to [plaintiffs] is . . . based upon the fact that they are a gay couple and, as such, is a denial of the equal service guaranteed by the Unruh Act."[4] We disagree.

Whatever this case is about, it is not one involving discrimination on the basis of sexual orientation. Plaintiffs' complaint alleges: "Defendants have refused and continue to refuse to issue a joint 'umbrella' liability insurance policy to plaintiffs on the alleged grounds that plaintiffs are not married and that, pursuant to certain underwriting criteria adopted by defendants, such joint 'umbrella' liability insurance policies are issued solely to heterosexual married couples." Thus, plaintiffs' complaint alleges that *all* unmarried individuals are treated the same with regard to the issuance of umbrella policies since plaintiffs are not and cannot be married. To the extent plaintiffs were treated differently than a "married couple," it is because they are not married and not because they are homosexuals. No facts are alleged to suggest unmarried heterosexual couples, or any other unmarried persons

---

[3]We use the term "sexual orientation" to refer generally to a person's sexual habits, practices, predilections, or compulsions with respect to heterosexuality, homosexuality, etc.

[4]Insurance Code section 1861.03, subdivision (a), provides in part "[t]he business of insurance shall be subject to the laws of California applicable to any other business," including the Unruh Act.

who live together and jointly own property, are treated any differently by defendant than were plaintiffs. We presume such facts do not exist.

Accordingly, plaintiffs' attempt to hinge the instant action on what they perceive as discrimination on the basis of their sexual orientation must fail. "Homosexuals are simply a part of the larger class of unmarried persons . . . . [Defendant's policies] have the same effect on the entire class of unmarried persons. Rather than discriminating on the basis of sexual orientation, [defendant's policies] distinguish eligibility on the basis of marriage. There is no difference in the effect of the eligibility requirement on unmarried homosexual and unmarried heterosexual employees." (*Hinman, supra,* 167 Cal.App.3d at p. 526.)

We hold as a matter of law plaintiffs have not stated and cannot state a viable claim for discrimination in violation of the Unruh Act on the basis of sexual orientation.

## IV

Plaintiffs assert defendant's refusal to issue them a joint umbrella policy constitutes arbitrary discrimination on the basis of marital status in violation of the Unruh Act. In their brief plaintiffs argue: "There are only two possible interpretations of [defendant's] refusal to offer [plaintiffs] the same policy offered to heterosexual married couples: either [defendant] discriminates against all unmarried couples or it discriminates only against gay men and lesbians. Since neither type of discrimination is permitted under the Unruh Act, the trial court's decision to grant [*sic*] the demurrer and enter judgment against [plaintiffs] is incorrect and should be reversed." For several reasons, plaintiffs' arguments are unavailing.

"Enacted in 1959, the Unruh Act secures equal access to public accommodations and prohibits discrimination by business establishments." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1150 [278 Cal.Rptr. 614, 805 P.2d 873]; hereafter cited as *Harris.*) Amended at various times since 1959, Civil Code section 51 now provides in pertinent part: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or blindness or other physical disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

Civil Code section 52 is designed to provide an enforcement mechanism for section 51 and other provisions of law. This section states in relevant

part: "Whoever denies . . . or makes any discrimination, distinction or restriction on account of sex, color, race, religion, ancestry, national origin, or blindness or other physical disability contrary to Section 51 . . . is liable for each and every offense . . . ."

At the outset, plaintiffs are faced with a difficult hurdle: the Unruh Act makes no mention of discrimination on the basis of "marital status." Plaintiffs concede as much. While the Unruh Act has been extended to include categories not expressly enumerated in Civil Code sections 51 and 52 (e.g., *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 736-741 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161] [families with children]; *In re Cox* (1970) 3 Cal.3d 205, 212, 216-218 [90 Cal.Rptr. 24, 474 P.2d 992] [unconventional dress or physical appearance]; *Rolon* v. *Kulwitzky, supra,* 153 Cal.App.3d at p. 292 [sexual orientation]), no court has extended the Unruh Act to claimed discrimination on the basis of marital status and we shall not be the first to do so.

Recently in *Harris, supra,* the court considered whether the Unruh Act should be extended to include "economic status" as a prohibited category of discrimination. Upon examining the history of the Unruh Act, the court came to the unremarkable conclusion the Legislature intended the scope of the Unruh Act be confined to the types of discrimination specifically enumerated therein. (52 Cal.3d at pp. 1154-1155.) While the *Harris* court refused to overrule prior case law which extended the Unruh Act to classifications not expressed in the statute (*id.* at p. 1155), the court made it clear future expansion of prohibited categories should be carefully weighed to ensure a result consistent with legislative intent. (*Id.* at pp. 1156-1162; see *Gayer* v. *Polk Gulch, Inc.* (1991) 231 Cal.App.3d 515, 522-523 [282 Cal.Rptr. 556].)[5]

In light of *Harris,* we decline plaintiff's invitation to expand the Unruh Act to include "marital status" as an additional category of prohibited discrimination. There is a strong policy in this state in favor of marriage (*Elden* v. *Sheldon* (1988) 46 Cal.3d 267, 274-275 [250 Cal.Rptr. 254, 758 P.2d 582]; *Norman* v. *Unemployment Ins. Appeals Bd.* (1983) 34 Cal.3d 1, 9 [192 Cal.Rptr. 134, 663 P.2d 904]; *Hinman, supra,* 167 Cal.App.3d at p. 527), and in the context here presented that policy would not be furthered

---

[5]The *Harris* court concluded the repeated enumeration of specific classes contained in Civil Code sections 51 and 52, when viewed in light of general principles of statutory construction, "strongly suggests" a legislative intent that the protection of the Unruh Act is limited. (52 Cal.3d at p. 1161.) *Harris* cautioned against further expansion of coverage under the Unruh Act: "[W]ere we writing on a clean slate, the repeated emphasis in the language of [Civil Code] sections 51 and 52 on the specified classifications of race, sex, religion, etc., would represent a highly persuasive, if not dispositive, factor in our construction of the [Unruh] Act." (*Id.* at p. 1159.)

(and in the case of an unmarried heterosexual couple, would actually be thwarted) by including marital status among the prohibited categories. It is for the Legislature, not the courts, to determine whether nonmarital relationships such as that involved in this case "deserve the statutory protection afforded the sanctity of the marriage union." (Fn. omitted, *People* v. *Delph* (1979) 94 Cal.App.3d 411, 416 [156 Cal.Rptr. 422, 4 A.L.R.4th 416].)

Moreover, the term "marital status" is hardly foreign to the Legislature. There are scores of statutes in which the Legislature has included "marital status" in antidiscrimination legislation. (E.g., Bus. & Prof. Code, § 125.6; Civ. Code, §§ 798.20, 800.25, 1812.30; Corp. Code, §§ 5047.5, 24001.5; Ed. Code, §§ 230, 45293, 88112; Elec. Code, § 308; Fin. Code, § 40101; Gov. Code, §§ 8310, 12920, 12921, 12926, 12927, 12930, 12931, 12935, 12940, 12955, 12993, 12995, 18500, 19572, 19702, 19704, 19793, 54701.12, 65583; Health & Saf. Code, §§ 1365.5, 33050, 33435, 33436, 33724, 33769, 35811, 37630, 37923, 50955, 51602; Ins. Code, § 679.71; Lab. Code, § 1735; Prob. Code, § 401; Pub. Resources Code, §§ 5080.18, 5080.34; Pub. Util. Code, §§ 453, 3542; Welf. & Inst. Code, §§ 10000, 18907.) Clearly the Legislature knows how to designate marital status as a prohibited category of discrimination when inclined to do so. Because it has not done so in the Unruh Act, we refuse to do so on our own accord.

Civil Code section 51 does not apply for a second reason, made evident by its terms: "This section shall not be construed to confer any right or privilege on a person which is conditioned or limited by law or which is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, or blindness or other physical disability." Applied to the instant facts, this part of Civil Code section 51 indicates the Unruh Act was not intended to create a right of insurance access so long as the insurer's policy is applicable alike to all persons regardless of race, color, sex, religion, etc. (Cf. *Harris, supra,* 52 Cal.3d at p. 1155; *Gayer* v. *Polk Gulch, Inc., supra,* 231 Cal.App.3d at p. 522.)

Here, there is no question defendant's issuance of umbrella policies is uniform and without regard to any of the categories set forth in Civil Code section 51. Plaintiffs are simply in no position to claim they have been singled out for arbitrary treatment with regard to their application for a joint umbrella policy.

■ Moreover, the Unruh Act prohibits "arbitrary" discrimination. (See *Harris, supra,* 52 Cal.3d at p. 1154; *In re Cox, supra,* 3 Cal.3d at pp. 212, 216-217.) Thus, a court must consider whether the defendant possesses a legitimate business interest which justifies different treatment: " 'A business

establishment may, of course, promulgate reasonable deportment regulations that are rationally related to the services performed and the facilities provided.' " (*Harris, supra,* 52 Cal.3d at p. 1162, quoting *In re Cox, supra,* 3 Cal.3d at p. 217.)

On its face there is nothing arbitrary about defendant's issuance of joint umbrella policies only to married persons. Given the legal unity of interest and the shared responsibilities attendant upon a marriage, an insurer could reasonably conclude there is no significant risk in covering both an insured and his or her spouse with a joint policy for a single premium. With regard to unmarried couples of whatever sexual orientation, an insurer could conclude the relationship lacks the assurance of permanence necessary to assess with confidence the risks insured against in a joint umbrella policy.

Equally important, the shared responsibilities and the legal unity of interest in a marital relationship—a status not conferred on unmarried couples whatever their sexual orientation—provide a fair and reasonable means of determining eligibility for services or benefits. (See *Norman v. Unemployment Ins. Appeals Bd., supra,* 34 Cal.3d at pp. 8, 10; *In re Cummings* (1982) 30 Cal.3d 870, 873-874 [180 Cal.Rptr. 826, 640 P.2d 1101, 29 A.L.R.4th 1207].)

In *Hinman,* the state employer extended dental insurance benefits to the employee's "family members," which included only the employee's spouse and, in some instances, unmarried children up to age 23. In upholding this scheme against an equal protection attack, we held "the use of the definition of 'family member' . . . is a reasonable means of administering the dental benefit program. . . . '[R]ecognizing and favoring those with established marital and familial ties not only furthers the state's interest in promoting such relationships but assures a more readily verifiable method of proof. . . . [N]umerous problems of standards and difficulties of proof would arise if we imposed upon an administrative agency the function of deciding which relationships merited treatment equivalent to the treatment afforded those with formal marriages. The inevitable questions would include issues such as the factors deemed relevant, [i.e] the length of the relationship . . . . The potential for administrative intrusions into rights of privacy and association would be severe if agencies bore the burden of ferreting out the "true depth" and intimacy of a relationship in order to determine whether the existence and nature of the relationship was the equivalent of marriage. [Citation.]'

"The same difficulties would attend a dental benefits scheme allowing enrollment of homosexual partners. The responsible agencies would have to

establish standards which would reach the very foundations of the privacy rights of both homosexual partners in order to properly determine whether the relationship meets some arbitrary standard equating with marriage, and still exclude other unmarried nonspouses, such as roommates, acquaintances or companions. . . . The great potential for different opinions by the employer, insurers and unions as to who is an eligible homosexual partner could expose all parties to allegations of discriminatory treatment and the making public of any administrative examination of the sexual relationships involved." (Fn. omitted, *Hinman, supra*, 167 Cal.App.3d at p. 528.)

As in *Hinman*, the fact the parties are married provides a reasonable and relevant means whereby an insurer can predict the risk involved in offering umbrella coverage. In order to assess the risk with regard to unmarried individuals, the insurer would necessarily be required to undertake a "massive intrusion" (*Elden v. Sheldon, supra*, 46 Cal.3d at p. 276) into the private lives of applicants—e.g., inquire into their sexual fidelity and emotional and economic ties. (See *id.* at pp. 276-277.) We see no reason why an insurer, any more than an administrative agency, should be forced to engage in such inquiry, which could only lead to inconsistent results and predictably to allegations of discriminatory treatment by the insurer. (See *ibid.*; *Hinman, supra*, 167 Cal.App.3d at p. 528.)

Finally, *Harris* holds that before extending the categories set forth in the Unruh Act, the court must consider the consequences of allowing the type of claim sought by the plaintiffs: "When uncertainty arises in a question of statutory interpretation, consideration must be given to the consequences that will flow from a particular interpretation." (52 Cal.3d at p. 1165.) What plaintiffs seek to achieve by this litigation is that both defendant and this court treat them as if they were in fact married. The result would be that all de facto couples would be treated as a married unit.

Any such holding would be contrary to the strong policy in this state favoring marriage (See *Marvin v. Marvin* (1976) 18 Cal.3d 660, 684 [134 Cal.Rptr. 815, 557 P.2d 106]) and would ignore the fact de facto couples are not generally entitled to the benefits afforded to married couples. Indeed, married couples receive special consideration in a number of areas not available to unmarried individuals, including the right to bring a wrongful death action if a third party kills one spouse (Code Civ. Proc., § 377; cf. *Nieto v. City of Los Angeles* (1982) 138 Cal.App.3d 464, 470-471 [188 Cal.Rptr. 31] [holding no unlawful discrimination in refusing to extend this right to unmarried cohabitants]), the right to sue for loss of consortium and negligent infliction of emotional distress (cf. *Elden v. Sheldon, supra*, 46 Cal.3d at pp. 274-275, 277-278 [denying this right to unmarried cohabitants]), the marital communications privilege (cf. *People v. Delph, supra*, 94

Cal.App.3d at pp. 415-416 [refusing to extend this privilege to nonmarital partners]), and community property laws, including the right to divide community property and to seek spousal support on the termination of marriage (Civ. Code, §§ 4800, 4801; cf. *Marvin* v. *Marvin, supra,* 18 Cal.3d at p. 684, fn. 24 [refusing to extend to unmarried cohabitants the rights the Family Law Act gives to valid or putative spouses]; see also *Elden* v. *Sheldon, supra,* 46 Cal.3d at p. 275).

Our refusal to grant plaintiffs the relief they seek reaffirms "our recognition of a strong public policy favoring marriage. [Citation.] No similar policy favors the maintenance of nonmarital relationships. . . . In the absence of legislation which grants to members of a nonmarital relationship the same benefits as those granted to spouses, no basis exists in this context for extending to nonmarital relations the preferential status afforded to marital relations." (*Norman* v. *Unemployment Ins. Appeals Bd., supra,* 34 Cal.3d at p. 9.)

In light of the foregoing considerations, we must decline to extend the protection of the Unruh Act to plaintiffs even as we would to an unmarried, cohabitating heterosexual couple.

In the final analysis, plaintiffs' "real quarrel is with the California Legislature if they wish to legitimize the status of a homosexual partner. Plaintiffs may achieve the reform they seek here only by attacking Civil Code section 4100, which defines marriage to be a civil contract 'between a man and a woman.' We cannot change that law here." (*Hinman, supra,* 167 Cal.App.3d at p. 531.)[6]

The judgment is affirmed.

Marler, J., and Nicholson, J., concurred.

---

[6]Defendant's assertions plaintiffs failed to exhaust their administrative remedies and plaintiffs' exclusive remedy is governed by the Insurance Code have been considered and are without merit.