[No. A069005. First Dist., Div. Two. Feb. 8, 1996.]

JOHN L. KING, Plaintiff and Appellant, v.
ROSWITHA HOFER, Defendant and Respondent.

**COUNSEL**

John L. King, in pro. per., for Plaintiff and Appellant.

Eliot Gorson for Defendant and Respondent.

OPINION

SMITH, J.—Plaintiff John L. King appeals following a grant of summary judgment and denial of leave to amend in this discrimination action brought under the Unruh Civil Rights Act (the Act; Civ. Code, § 51 et seq.) against Roswitha Hofer, doing business as Ottino's Delicatessen. We affirm, concluding that the Act does not afford protection to business patrons allegedly discriminated against for their status as nonsmokers.

King's complaint alleges that he was a regular patron of defendant's Orinda restaurant, which has a bar area in the same undivided space, where smoking is prohibited by local ordinance (Orinda Mun. Code, tit. 6, ch. 6-1, §§ 6-101 to 6-110) during hours in which the restaurant is also open. On the afternoon of April 16, 1994, King was dining in the restaurant when he noticed tobacco smoke and that patrons of the bar were smoking. This caused him respiratory distress and, upon leaving, he asked an employee working at the restaurant counter why smoking was being permitted. The employee told him that smoking was allowed in the bar during overlapping hours. King complained by letter to the city manager three days later, requesting enforcement of the ordinance, and on April 28 that office sent Hofer a letter requiring compliance, along with a copy of King's complaint letter.

On the next day, April 29, King allegedly got two telephone calls from Hofer, who "acted in a retaliatory, hostile, rude, abusive and insulting manner," telling him "that if he didn't like smoke he should go somewhere else, that he was no longer welcome in [her] restaurant, and that [Hofer] had a right to refuse to serve him and indicated that he would not be served in [the] restaurant in the future." "Solely because of [King's] complaint to the city for violation of [the ordinance]," Hofer insulted, abused and "refused to serve" him, in violation of the Act's prohibition against arbitrary discrimination, causing him embarrassment and emotional distress.

Defendant's motion for summary judgment (Code Civ. Proc., § 437c) urged that King was not a member of any protected class under the Act, had not been discriminated against on any such basis, and had never actually sought and been refused service at the restaurant. Deposition testimony by King confirmed the substance of his April 29 conversations with Hofer, that his claim of arbitrary discrimination was based solely on those conversations

and that he had not actually sought service since then.[1] Declarations from Hofer and employees present on April 16 denied their being aware that there was any smoking then or that King had any disability or personal characteristic which could be a basis for discrimination, and denied that he had in fact ever been refused service. Hofer conceded receiving the enforcement letter and declared that she told King over the telephone "that I enforced the ordinance, that I had the right to refuse him service and that if he did not like smoking he could go elsewhere." This was "not based on his membership in a group or any of his personal characteristics, but instead it was based on his behavior in writing to the City of Orinda to request enforcement" of the ordinance.

King's opposition urged that the discrimination against him was, by inference, based on his "personal characteristic" of being a "non-smoker," making him a protected class member under the Act. He also sought leave to amend his complaint to clarify that he had been discriminated against as a "non-smoker," and he subsequently filed a formal motion for leave to amend. Defendant opposed the amendment as a sham contradiction of prior allegations that the discrimination was retaliatory only and as futile in that the Act did not recognize nonsmokers as a protected class.

The court granted summary judgment and denied leave to amend, stating in its summary judgment order that defendant had not violated the Act. King timely appeals from the judgment entered thereon.

## DISCUSSION

The arguments on appeal generally track those made below. We find lack of class status for nonsmokers dispositive of both summary judgment and leave to amend. Issues of triable fact aside, summary judgment "necessarily includes a test of the sufficiency of the complaint and as such is in legal effect a motion for judgment on the pleadings. [Citations.]" (*Barnett v. Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219].) Because King's entire claim rests on discrimination for being a nonsmoker, summary judgment was proper and leave to amend to add nonsmoker allegations could not have cured the defect.

The Act applies by its terms to discrimination in public accommodations based on "sex, race, color, religion, ancestry, national origin, or disability . . . ." (Civ. Code, § 51.) Nevertheless, courts have deemed those

---

[1]He testified, "[Hofer] told me that if I didn't like to smoke in her restaurant, I could go somewhere else, that I was no longer welcome in her restaurant, that she had the right to refuse service to me, and that she would not serve me at her restaurant."

categories " 'illustrative rather than restrictive' " (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1152 [278 Cal.Rptr. 614, 805 P.2d 873] (*Harris*), quoting *In re Cox* (1970) 3 Cal.3d 205, 216-217 [90 Cal.Rptr. 24, 474 P.2d 992]) and have construed the Act to apply to several unexpressed classifications—namely, unconventional dress or physical appearance, families with children, persons under age 18, and homosexuality. (*Harris, supra*, at p. 1155, and cases cited.) In *Harris*, the Supreme Court questioned whether it would so expand the Act were it "writing on a clean slate" (*id.* at p. 1159); nevertheless, given legislative acquiescence in those case holdings—if not in broader language condemning all arbitrary, unreasonable or stereotyped discrimination (*id.* at pp. 1155-1157)—the Supreme Court chose to honor those holdings while reigning in the broader language and setting guidelines for future construction.

The court mandated inquiry into three areas: (1) the language and history of the Act; (2) any legitimate business interests justifying limitations on consumer access; and (3) the consequences of expanding class recognition. Utilizing that approach, the court decided that the Act did not prohibit "economic discrimination" in the form of a landlord requirement that prospective tenants have gross monthly incomes of at least three times the rent to be charged. (*Harris, supra*, 52 Cal.3d 1142, 1148, 1159-1169.) First, the Act's expressed classifications involved "personal as opposed to economic characteristics—a person's geographical origin, physical attributes, and personal beliefs" (*id.* at p. 1160), and no case law from this or any other jurisdiction supported an expansion to economic discrimination (*id.* at p. 1161).[2] Second, it was reasonable and a legitimate business need of landlords to rely on gross income as a determinant of ability to pay. (*Id.* at pp. 1162-1165.) Third, the proposed expansion would have twin adverse consequences of embroiling courts in "microeconomic decisions" in a far-reaching range of commercial contexts and discouraging, contrary to antidiscrimination policy, business application of a criterion which was neutral as to the expressed classifications in the Act. (*Id.* at pp. 1166-1169.)

Subsequent cases have applied the *Harris* approach to hold that the Act does not cover business retaliation against patrons who have brought actions under the Act (*Gayer* v. *Polk Gulch, Inc.* (1991) 231 Cal.App.3d 515, 522-525 [282 Cal.Rptr. 556]) or insurance price discrimination based on marital status (*Beaty* v. *Truck Ins. Exchange* (1992) 6 Cal.App.4th 1455,

[2]"In addition to representing personal characteristics, the categories listed in the Act are also the subject of large bodies of statutory and constitutional law on both state and federal levels designed to protect classes of persons who have achieved historical recognition as distinct objects of adverse treatment by public and private entities, e.g., Blacks, Hispanics, and women." (*Harris, supra*, 52 Cal.3d 1142, 1161, fn. 9.)

1461-1466 [8 Cal.Rptr.2d 593]). ■ We apply *Harris* to the nonsmoker classification which King proposes here.

### Language and history of the Act

King summarizes the Act's express categories and case law expansions as being personal characteristics that are either "fixed attributes, unchangeable and inhering to the individual," or "chosen attributes, involving choices changeable though not often changed, based on deep conviction." He then offers as to nonsmokers: "Certainly being a non-smoker is a kind of 'physical attribute' and a 'personal belief,' a 'personal trait,' an attribute not readily or usually changed, a 'life-style,' and inhering to a person's basic and permanent nature, and usually a personal belief based on deep conviction"; "non-smokers are certainly a discrete and significant class within society, who have as a class endured oppression from public smoking and smokers, and . . . it is in the public interest to protect non-smokers from the health hazards of smoking, and the consequent cost to society."

The argument is overblown. Nonsmoking might be termed a physical attribute of sorts, but it is not one which is immediately apparent or carries any negative connotation in the usual setting. Also, nonsmokers enjoy solid majority status in our society, and few would regard that lifestyle choice as a "personal belief." For those who do, it is obviously not a belief seriously equatable with religion, the only express "belief" category in the Act. Nor is it an immutable characteristic. As for the wisdom of protecting nonsmokers from the health hazards of smoking, that is a policy matter for health and safety legislation. We are cited no authority or history suggesting that the Act addresses health and safety in public accommodations—only certain forms of discrimination. The best case law precedent for King's proposed class is the expansion of the Act to prohibit arbitrary discrimination against persons wearing long hair and unconventional clothing. (*In re Cox, supra*, 3 Cal.3d 205, 210.) However, the heart of that decision was the protection of persons having *unconventional* appearance. A nonsmoker, by contrast, is *conventional* in his or her appearance and choice not to smoke. King cites us no precedent from this or any other jurisdiction (cf. *Harris, supra*, 52 Cal.3d 1142, 1161) treating nonsmokers as a protected class in the area of civil rights.

### Legitimate business interests

King next asserts, "[C]ertainly discrimination against non-smokers is not justified by any legitimate business interest in this case." We do not believe that a *Harris* inquiry is limited to what happened "in this case." We also

disagree that there are no legitimate business needs to discriminate against nonsmokers. The facts here suggest a hypothetical where a nonsmoker in a restaurant complains of cigarette smoke and is urged to move to a nonsmoking section, perhaps against his or her preference in decor, lighting, music or some other factor. A local ordinance allows smoking but confined to one area, and the restaurant owner has so complied. Should the patron balk at leaving the preferred area yet insist on smoke-free air, employees may have no choice but to ask him or her to leave. Local law and sound judgment in essence compel discrimination against the nonsmoker. In such a case, "the particular business interests of the purveyor in maintaining order, complying with legal requirements, and protecting a business reputation or investment [are] sufficient to justify distinctions among its customers." (*Harris, supra,* 52 Cal.3d 1142, 1162.) Civil Code section 51 codifies that principle by providing in part, "This section shall not be construed to confer any right or privilege on a person which is conditioned or limited by law or which is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, or disability."

### Consequences of inclusion

The hypothetical just discussed also suggests a serious adverse consequence of recognizing nonsmokers as a protected class—namely, placing the business in a legal dilemma, caught between smoking restrictions and the Act. Another is that the classification necessarily divides the entire world into two classes—smokers and nonsmokers—with anomalous and awkward results. If nonsmokers were protected, no such protection could possibly be extended to smokers, whose freedom to smoke in places of public accommodation is widely regulated, as by the city ordinance in this case. Thus the restaurant, for example, would be required by local (or statewide) law to discriminate against the smoker yet be prohibited by the Act from discriminating against the nonsmoker. This would be not only anomalous but difficult to execute. How could one tell in the hypothetical above whether the complaining diner was a smoker or nonsmoker? A smoker may be just as likely as a nonsmoker to object to breathing secondhand smoke during a meal. And how does one discern more generally who is and is not a smoker? Only someone who is presently smoking gives a reliable indication. What of the regular patron who, a lifelong smoker until she quit two weeks ago, enters the business without warning of her newly changed—and now protected—status?

We conclude based on the statutory language and history, legitimate business interests, and adverse consequences of inclusion, that nonsmokers are not a protected class under the Act.

## Disposition

The judgment is affirmed.

Kline, P. J., and Haerle, J., concurred.