103 Cal.Rptr.2d 552 (2001)
86 Cal.App.4th 833
HESSIANS MOTORCYCLE CLUB et al., Plaintiffs and Appellants,
v.
J.C. FLANAGANS et al., Defendants and Respondents.
No. G022832.
Court of Appeal, Fourth District, Division Three.
January 29, 2001.
Review Denied May 2, 2001.
*553 Law Offices of Richard M. Lester, Encino, and Randolph M. Hammock, Los Angeles, for Plaintiffs and Appellants.
Ronald Talmo, for Defendants and Respondents.

OPINION
ARONSON, J.[*]
A sports bar denied Omittance to members of two motorcycle clubs when they refused to comply with the bar's policy requiring them to remove their "colors" (the patch on a motorcycle jacket signifying membership in a particular club) before entering. The excluded club members sued, asserting the tavern violated their rights under the Unruh Civil Rights Act (Civ.Code,[1] §§ 51, 52; hereafter the Unruh Civil Rights Act or the Act). In a trial based on stipulated facts, the court found no Unruh Civil Rights Act violation and entered judgment for the bar. We affirm.
Facts
The parties stipulated to the following facts: Defendant J.C. Flanagans (Flanagans) is a sports bar which admits patrons wearing casual attire, including "motorcycle" attire, with one pertinent restriction. Flanagans refuses entry to anyone wearing *554 "colors" or a patch indicating membership in a particular motorcycle club. Flanagans offers a security rationale for the policy: Its management believes allowing colors to be worn would lead to fights between rival motorcycle gangs in the bar. No such incident has ever occurred at Flanagans.
On two different occasions, members of two motorcycle clubs (collectively, the Hessians) were turned away at the door of Flanagans because they refused to remove their colors. The Hessians sued for damages and injunctive relief, claiming the bar's admission policy constituted unlawful discrimination under the Unruh Civil Rights Act.

DISCUSSION
The Unruh Civil Rights Act prohibits businesses from denying any person access to public accommodations based on specified classifications. (Harris v. Capital Growth Investors XIV (1991) 52 Cal.3d 1142, 1148, 278 Cal.Rptr. 614, 805 P.2d 873 (Harris).) Section 51, subdivision (b), provides in part: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."
In addition to the particular forms of discrimination specifically outlawed by the Act (sex, race, color, etc.), courts have held the Act "prohibits] discrimination based on several classifications which are not specifically enumerated in the statute." (Gayer v. Polk Gulch, Inc. (1991) 231 Cal.App.3d 515, 520, 282 Cal. Rptr. 556.) These judicially-recognized classifications include unconventional dress or physical appearance (In re Cox (1970) 3 Cal.3d 205, 217-218, 90 Cal.Rptr. 24, 474 P.2d 992), families with children (Marina Point, Ltd. v. Wolfson (1982) 30 Cal.3d 721, 736-741, 180 Cal.Rptr. 496, 640 P.2d 115), homosexuality (Rolon v. Kulwitzky (1984) 153 Cal.App.3d 289, 292, 200 Cal. Rptr. 217), and persons under 18 (O'Connor v. Village Green Owners Assn. (1983) 33 Cal.3d 790, 794, 191 Cal.Rptr. 320, 662 P.2d 427).
In Harris, supra, 52 Cal.3d 1142, 278 Cal.Rptr. 614, 805 P.2d 873, the Supreme Court reexamined these earlier decisions which treated the list of statutory classifications as "`illustrative rather than restrictive'" (id. at p. 1152, 278 Cal.Rptr. 614, 805 P.2d 873) and cautioned against extending the Act's reach any further. "[W]ere we writing on a clean slate, the repeated emphasis in the language of sections 51 and 52 on the specified classifications of race, sex, religion, etc., would represent a highly persuasive, if not dispositive, factor in our construction of the Act. [Citation.]" (Id. at p. 1159, 278 Cal. Rptr. 614, 805 P.2d 873.) The court concluded "the Legislature intended to confine the scope of the Act to the ... types of discrimination" specifically identified in the statute. (Id, at p. 1155, 278 Cal.Rptr. 614, 805 P.2d 873.)
Despite this conclusion, the Harris court did not overrule the prior cases which extended the Act to certain nonenumerated classifications. (Harris, supra, 52 Cal.3d at p. 1155, 278 Cal.Rptr. 614, 805 P.2d 873.) The court did, however, adopt a new, narrower construction of the Act and "made it clear future expansion of prohibited categories should be carefully weighed to ensure a result consistent with legislative intent. [Citations.]" (Beaty v. Truck Ins. Exchange (1992) 6 Cal.App.4th 1455, 1462, 8 Cal.Rptr.2d 593, italics added.) To that end, the court engaged in a three-step inquiry in considering (and rejecting) application of the Act to "economic" discriminationthe "new" classification at issue in that case. (Harris, supra, 52 Cal.3d at pp. 1159-1169, 278 Cal.Rptr. 614, 805 P.2d 873 [analyzing (1) the language of the statute, (2) the legitimate business interests of the defendants, and (3) the consequences of allowing the new discrimination claim].) In the wake of Harris, courts have consistently followed this three-part analysis when determining whether discrimination *555 which implicates a "new" classification is prohibited by the Act. (See, e.g., King v. Hofer (1996) 42 Cal.App.4th 678, 682, 49 Cal.Rptr.2d 719; Beaty v. Truck Ins. Exchange, supra, 6 Cal.App.4th at pp. 1462-1465, 8 Cal.Rptr.2d 593; Gayer v. Polk Gulch, Inc., supra, 231 Cal. App.3d at p. 521, 282 Cal.Rptr. 556.)
The Hessians attempt to stake out an Unruh Civil Rights Act claim here by characterizing their exclusion from the bar as discrimination based on unconventional appearancea nonenumerated classification recognized in In re Cox, supra, 3 Cal.3d 205, 217-218, 90 Cal.Rptr. 24, 474 P.2d 993, and reaffirmed in Harris, supra, 52 Cal.3d at p. 1155, 278 Cal.Rptr. 614, 805 P.2d 873. In Cox, a shopping mall attempted to eject a young man based solely on the appearance of his companion "who wore long hair and dressed in an unconventional manner." (In re Cox, supra, 3 Cal.3d at p. 210, 90 Cal.Rptr. 24, 474 P.2d 992.) The court held the Unruh Civil Rights Act barred such treatment; in fact, the court held the Act "prohibited] all arbitrary discrimination by business establishments." (Id. at p. 216, 90 Cal.Rptr. 24, 474 P.2d 992, italics added.) Harris subsequently limited that holding to the much narrower rule that the Act precludes discrimination based on unconventional appearance. (Harris, supra, 52 Cal.3d at pp. 1155, 1161, 278 Cal.Rptr. 614, 805 P.2d 873.)
Flanagans did not refuse to admit the Hessians because their appearance or clothing was unconventional. The Hessians concede "bikers" wearing full motorcycle regalia are welcomed in the bar. Its management does not blink at long hair, leather or tattoos. The only part of the Hessians' outfit considered objectionable was an accompanying patchsignifying allegiance to a particular club (and signifying "trouble" to the bar). It was this patch alone which kept the Hessians out of Flanagans. This is not discrimination based on a person's unconventional appearance as recognized in Cox and Harris.
Alternatively, the Hessians argue we should extend the Unruh Civil Rights Act to cover discrimination against motorcycle club members wearing colors. This assertion of a new prohibited classification requires us to engage in the three-part inquiry the court laid out in Harris. (See Harris, supra, 52 Cal.3d at pp. 1159-1169, 278 Cal.Rptr. 614, 805 P.2d 873; King v. Hofer, supra, 42 Cal.App.4th at p. 682, 49 Cal.Rptr.2d 719.)
We consider first the language of the statute. Section 51, subdivision (c), provides: "This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, disability, or medical condition." In Harris, the court interpreted this sentence to mean that a policy which limits access to public accommodations does not amount to prohibited discrimination so long as the policy "is applicable alike to all persons regardless of race, color, sex, religion, etc." (Harris, supra, 52 Cal.3d at p. 1155, 278 Cal.Rptr. 614, 805 P.2d 873; Beaty v. Truck Ins. Exchange, supra, 6 Cal.App.4th at p. 1463, 8 Cal. Rptr.2d 593.)
The "no colors" rule at Flanagans is precisely such a policy. It is equally applicable to all persons, regardless of their race, color, sex, etc. The Hessians cannot claim they have been singled out for arbitrary treatment with regard to admission. Consequently, we find the bar's admission policy does not constitute the sort of discrimination which was meant to be precluded by the Act.
We next consider "whether or not the defendant possessed a legitimate business interest in excluding plaintiffs, which might justify denial of access to a place of public accommodation...." (Gayer v. Polk Gulch, Inc., supra, 231 Cal.App.3d at p. 523, 282 Cal.Rptr. 556, citing Harris, supra, 52 Cal.3d at p. 1162, 278 Cal.Rptr. 614, 805 P.2d 873.) The Hessians concede that, under Hams, the critical issue is whether the challenged policy "bears a reasonable relation to commercial objectives appropriate to an enterprise serving *556 the public...." (Harris, supra, 52 Cal.3d at p. 1165, 278 Cal.Rptr. 614, 805 P.2d 873.) They contend Flanagans's "no colors" policy serves no such legitimate commercial objective.
They argue essentially two points. First, they contend that because the rationale underlying the policy is the prevention of fights between rival gang members, the policy is for "security" reasons rather than "economic" ones, and thus does not serve a "legitimate business interest." The argument is nonsensical. Security concerns obviously impact a business's bottom line. Barroom brawls are usually costly affairs involving extensive damage, repairs and loss of customers. The prevention of brawls is surely a legitimate business interest.
The Hessians's second argument is that the "no colors" policy is not reasonably related to the express goal of preventing fights. They challenge the policy's underlying premise that allowing colors would cause an incident between rival motorcycle gangs. They point out that there has never been such an incident in Flanagans, and argue that rival club members can identify each other with or without colors and "the lack of a `patch' is not going to prevent such an altercation."
We decline to second guess Flanagans's business judgment in this matter. Given the magnitude of the losses that could result from a barroom brawl, we cannot find as a matter of law that the bar's policy of prohibiting colors is irrational. Nor can we say the bar's perception of the wearing of colors as provocative is unfounded. (Curiously, the Hessians ignore the possibility this policy may be the very reason the bar has not yet had a violent incident.) We thus conclude the challenged admission policy serves a legitimate business interest.
The last step of our analysis is a consideration of the consequences of allowing the discrimination claim asserted by the Hessians. (Harris, supra, 52 Cal.3d at p. 1165, 278 Cal.Rptr. 614, 805 P.2d 873.) We believe allowing a discrimination claim of this nature would lead to endless, increasingly frivolous challenges to dress codes and other neutral admission "policies common in many restaurants and retail establishments. The drafters of the Unruh Civil Rights Act would surely blanch at the thought of having its noble provisions applied to such policies, which involve none of the classifications enumerated in the Act, and certainly none of the pernicious effects of real discrimination.
We conclude the Unruh Civil Rights Act does not encompass discrimination based on the wearing of colors.[2]

DISPOSITION
The judgment is affirmed. Respondents are entitled to their costs on appeal.
SILLS, P.J., and BEDSWORTH, J., concur.
NOTES
[*] Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] All further statutory references are to the Civil Code.
[2] The Hessians briefly argue, almost as an afterthought, that Flanagans's admission policy violates their First Amendment right to freedom of expression. They contend wearing the patch is expressive conduct meriting federal constitutional protection under Cohen v. California (1971) 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284. But they forget one thing: the reach of the First Amendment. In Lloyd Corp. v. Tanner (1972) 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131, the United States Supreme Court noted that the First Amendment imposes limitations "on state action, not on action by the owner of private property used nondiscriminatorily for private purposes only." (Id. at p. 567, 92 S.Ct. 2219.) In Lloyd the court held a group of individuals protesting the Vietnam War had no First Amendment right to leaflet at a large, private shopping center. The court stated property does not "lose its private character merely because the public is generally invited to use it for designated purposes." (Id. at p. 569, 92 S.Ct. 2219.) Rather, only private property which has been "dedicat[ed] ... to public use" is subject to First Amendment limitations. (Id. at p. 570, 92 S.Ct. 2219.) Obviously, this description does not apply to Flanagans.