Filed 7/22/22  White v. Block CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ROBERT E. WHITE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>BLOCK, INC.,<br><br>    Defendant and Respondent. | A161481<br><br>(San Francisco City and County<br>Super. Ct. No. CGC-19-580267) |

Attorney Robert E. White sued Square, Inc. (now Block, Inc.), alleging that Block's terms of service discriminate against bankruptcy attorneys in violation of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.; the Act).[1]  The trial court sustained Block's demurrer without leave to amend and White appeals.  We agree with the trial court that White cannot state a cause of action under the Act and affirm.

### BACKGROUND

#### A.

The Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation,

---

[1] Undesignated statutory references are to the Civil Code.

citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments." (§ 51, subd. (b).) Our Supreme Court has held that the explicitly identified bases of discrimination—sex, race, religion, etc.—are merely illustrative, not exclusive. (*Koebke v. Bernardo Heights Country Club* (2005) 36 Cal.4th 824, 839 (*Koebke*).)

**B.**

Block offers an internet service that allows individuals and businesses to accept credit card payments without directly opening their own merchant account with a Visa or MasterCard member bank. Block's terms of service state that when a user creates an account, the user agrees to " 'not accept payments in connection with the following businesses or business activities: (1) any illegal activity or goods, . . . (3) credit counseling or credit repair agencies, . . . (14) betting, including lottery tickets, casino gaming chips, off-track betting, and wagers at races, . . . (19) high-risk products and services, including telemarketing sales, . . . (21) adult entertainment oriented products or services . . . , (22) sales of . . . firearms . . . , (27) escort services, or (28) *bankruptcy attorneys or collection agencies engaged in the collection of debt.*' " (Italics added.)

White's operative complaint alleges that he intended to sign up for and use Block's service. Every day for several years, White visited Block's website and carefully reviewed its terms of service. White acknowledges that there is no standard definition of "bankruptcy attorney" and that many who might be considered bankruptcy attorneys (under a broad definition) *can* use Block to process payments for business activities (including legal services) that are not bankruptcy- or debt-related. However, because White intended to use Block's services for his bankruptcy practice, he believed he could not sign the registration agreement in good faith and declined to proceed. He seeks injunctive relief

2

and statutory penalties (based on more than 1,200 daily visits to Block's website), alleging that Block's terms of service constitute intentional and arbitrary occupational discrimination—against bankruptcy attorneys—in violation of the Act.

Block filed a demurrer, arguing, among other things, that White failed to plead facts stating a cause of action under the Act. The trial court agreed, explaining that Block's policy is based on the nature of the transactions engaged in by bankruptcy attorneys and debt collectors rather than any intent to discriminate against bankruptcy attorneys because of their "personal characteristics." The court sustained Block's demurrer without leave to amend, and entered judgment against White.

## DISCUSSION

White argues that Block's terms of service constitute arbitrary occupational discrimination, in violation of the Act, because there is no rational reason for Block to exclude all bankruptcy attorneys. After independently reviewing White's complaint (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501), we agree that he does not plead facts sufficient to state a cause of action under the Act. (*Semler v. General Electric Capital Corp.* (2011) 196 Cal.App.4th 1380, 1386 (*Semler*).)

## 1.

The Act's purpose is to eradicate arbitrary, invidious discrimination by California's businesses. (*White v. Square, Inc.* (2019) 7 Cal.5th 1019, 1025.) To that end, it prohibits businesses from excluding people based on personal characteristics specified in the Act, such as sex, race, and religion. (§ 51, subd. (b); *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1172 (*Harris*), superseded by statute on another ground as stated in *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 664-665.) The Act exempts business policies that apply alike to all persons

regardless of their personal characteristics. (§ 51, subd. (c); *Harris, supra*, at p. 1172.)

In *Harris, supra,* 52 Cal.3d 1142, our Supreme Court reexamined earlier decisions that construed the Act expansively to proscribe any " 'arbitrary' " discrimination and that added new personal characteristics (physical appearance, age, and sexual orientation) to the list in the statute. (*Id.* at pp. 1152, 1154-1156.) While not overruling these cases, the court limited them to their holdings; rejected the notion that the Act broadly proscribes any classification simply because it could be viewed as arbitrary, unreasonable, or based on a stereotype; and cautioned against extending the Act further. (*Id.* at pp. 1156-1159, 1160.) The Legislature intended the Act to apply to discrimination based on a consumer's personal characteristics, as opposed to financial or economic distinctions. (*Id.* at p. 1161.) *Harris* clarified that businesses retain the right to treat consumers differently when the distinction is based on legitimate business interests and is rationally related to the services offered. (*Id.* at pp. 1162-1163.) Businesses have latitude to adopt policies to protect their reputations, comply with legal requirements, and manage risks. (*Id.* at pp. 1162, 1167.)

"[W]riting on a clean slate," *Harris* examined the scope of the statute by considering three factors: (1) the language of the statute; (2) the defendant's legitimate business interests; and (3) the consequences of allowing the claim to proceed. (*Harris, supra,* 52 Cal.3d at pp. 1159-1169; *Hessians Motorcycle Club v. J.C. Flanagans* (2001) 86 Cal.App.4th 833, 836 (*Hessians*).)

**2.**

We first consider the language of the statute—in particular, the classifications explicitly listed in section 51, subdivision (b), such as race and gender. (*Harris*, *supra*, 52 Cal.3d at pp. 1157-1161.) The Legislature limited the statute's prohibition to discrimination based on personal characteristics or

traits fundamental to identity, as opposed to financial or economic distinctions. (*Ibid*.; *Koebke, supra*, 36 Cal.4th at pp. 840-843.) Accordingly, to state a cause of action under the Act, a plaintiff must plead that they were subject to discrimination based on a personal characteristic that is either listed in the statute or similar to those in the statute. (*Semler, supra*, 196 Cal.App.4th at p. 1392.)

Here, we need not determine whether occupation generally is a personal characteristic protected under the Act. A claim is not actionable merely because a plaintiff *says* that it fits within a cognizable form of discrimination. (See *Cohn v. Corinthian Colleges, Inc.* (2008) 169 Cal.App.4th 523, 526-528 (*Cohn*); *Hessians, supra*, 86 Cal.App.4th at pp. 837-838.) Rather, a plaintiff must plead facts establishing that the specific business classification at issue falls within the Act. (See *Harris, supra*, 52 Cal.3d at pp. 1165-1168; *Cohn, supra,* at pp. 527-529; *Hessians, supra,* at pp. 837-838.)

After independently scrutinizing the facts White pled, we agree with the trial court that Block's terms of service distinguish permissible from impermissible uses based on the nature of *transactions*, rather than on the basis of any personal characteristic. As we noted above, White acknowledges (in his operative complaint and in materials he asked the trial court to judicially notice when opposing Block's demurrer) that there is no standard definition of "bankruptcy attorney" and that many who might be considered bankruptcy attorneys (under a broad definition) *can* use Block to process payments for business activities (including legal services) that are not bankruptcy- or debt-related. In fact, White concedes, in his opening brief on appeal, that he was deterred from registering because he understood that he must agree not to use Block's services "in connection with any bankruptcy-related transactions."

Accordingly, although Block's terms of service specify that its service may not be used for payments connected to "bankruptcy attorneys," the exclusion is aimed at bankruptcy- and debt-related *transactions*, not bankruptcy attorneys' personal characteristics.  (See *Hessians, supra*, 86 Cal.App.4th at pp. 837-838 [refusal to admit bar patrons wearing patches signifying allegiance to a particular motorcycle club was intended to avoid fights, not discriminate based on unconventional appearance]; *Cohn*, *supra*, 169 Cal.App.4th at pp. 527-529 [baseball team's giveaway of tote bags to women was intended to celebrate Mother's Day, not discriminate based on gender].)

We also consider whether Block has a legitimate business interest in preventing consumers from using their service in bankruptcy and debt collection transactions.  Under *Harris*, the critical issue is whether the challenged policy "bears a reasonable relation to commercial objectives appropriate to an enterprise serving the public." (*Harris, supra*, 52 Cal.3d at p. 1165.)

Here, it is undisputed that Block has a legitimate interest in avoiding the legal and financial risks associated with facilitating bankruptcy-related payments.  Congress has imposed significant controls on professionals involved in bankruptcy cases.  (*In re Walker Land & Cattle, LLC* (Bankr. D. Idaho 2015) 535 B.R. 348, 351.)  For instance, if an attorney (representing a debtor) is paid compensation for services exceeding their reasonable value, the court may order the excessive payment returned to the estate or the entity that made the payment.  (11 U.S.C. § 329(b).)  Attorneys representing bankruptcy debtors are also forbidden from advising their clients to incur additional debt, such as through a credit transaction, to pay fees.  (11 U.S.C. § 526(a)(4); *Cadwell v. Kaufman* (11th Cir. 2018) 886 F.3d 1153, 1159, 1161.)  Thus, Block's policy bears a reasonable relation to a legitimate business interest in avoiding the potential financial

6

and legal risks, including payment disputes and chargebacks, related to fees paid by debtors to bankruptcy counsel.

This brings us to the essence of White's claim. White does not question the legitimacy of these risks—in fact, he concedes that Block's purported business reasons of "avoiding bankruptcy-related transactions . . . are [not] themselves unreasonable."[2] (See *Harris, supra*, 52 Cal.3d at p. 1162 [recognizing a business's interests in facilitating legal compliance are proper and sufficient to justify distinctions among its customers].) He even acknowledges—in his opposition brief before the trial court and in the operative complaint itself—that the Federal Deposit Insurance Corporation imposes similar requirements on banks when they open merchant accounts.

White instead argues that Block's terms are "arbitrary" because they are both under- and over-inclusive—for example, because they preclude a bankruptcy attorney from using Block's service to obtain fees from a *creditor* client. He also alleges that Block misidentifies high-risk bankruptcy transactions because it uses faulty algorithms, which Block could avoid by adopting more accurate methods used by conventional banks. Thus, White believes a trial is necessary to determine whether Block

---

[2] Although the argument was not raised in White's briefs, he asserted at oral argument that Block's purported business interests are not part of the record on demurrer. The argument is forfeited. (*PGA West Residential Assn., Inc. v. Hulven Internat., Inc.* (2017) 14 Cal.App.5th 156, 188-189.) In any event, the argument is unpersuasive. First, White himself acknowledges, in his operative complaint, that Block's interest in avoiding high risk transactions underlies its policy. Second, in analyzing legitimate business interests, courts routinely consider relevant statutes and common sense justifications. (See *Harris, supra,* 52 Cal.3d at p. 1164 & fn. 11; *King v. Hofer* (1996) 42 Cal.App.4th 678, 683–684; but see *Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1408 (*Sisemore*).)

arbitrarily discriminates against some bankruptcy attorneys whose transactions do not, in fact, present significant risk.

We disagree. *Harris* rejected the idea that courts must scrutinize facially legitimate business policies to assess whether they may have "arbitrary" effects on individuals that other, more narrowly tailored policies would avoid. (*Harris*, *supra*, 52 Cal.3d at pp. 1165-1167; accord, *Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 538 (*Roth*).) The *Harris* court examined, on review from a demurrer ruling, a landlord's policy of renting only to tenants that met a minimum income requirement. (*Harris*, *supra*, at p. 1149.) The court upheld the policy, in part, because it was reasonably related to the landlord's interest in ensuring tenants could afford the rent. (*Id.* at p. 1164.)

The court also rejected the plaintiffs' argument that they should be permitted to demonstrate at trial that the policy arbitrarily discriminated against *some* low-income tenants that *could* afford the rent or that other policy options would avoid these arbitrary effects. (*Harris, supra,* 52 Cal.3d at pp. 1165-1168.) It reasoned: "In the absence of clear legislative direction, which the general antidiscrimination provisions of the Unruh Act do not provide, we are unwilling to engage in complex economic regulation under the guise of judicial decisionmaking." (*Harris, supra,* at p. 1168.) Moreover, it made clear that a court may uphold a business policy, on demurer, as a question of law "when the policy or practice . . . is valid on its face because it bears a reasonable relation to commercial objectives appropriate to an enterprise serving the public." (*Id.* at p. 1165.)

Accordingly, the trial court in this case correctly declined to second guess Block's business judgment by adjudicating whether its legitimate business concerns apply in all instances or appear arbitrary at the margins. (*Harris, supra,* 52 Cal.3d at p. 1165; *Hessians, supra*, 86 Cal.App.4th at p. 838.) Block's policy bears a reasonable relation to legitimate commercial objectives. White

8

may be correct that the policy sweeps more broadly than necessary, that other methods may more accurately identify high-risk transactions, and that Block is neglecting a low-risk market. Regardless, it is still a business decision, not invidious discrimination based on personal characteristics. In the absence of an indication that a policy is a subterfuge for discrimination based on protected personal characteristics, courts should not regulate a corporation's risk management decisions or its assessment of market opportunities. (See *Harris*, *supra*, at pp. 1167-1168; *Roth*, *supra*, 25 Cal.App.4th at pp. 537-538, 539.) And even if the policy affects bankruptcy attorneys more than others, the Act does not permit disparate impact claims. (*Harris, supra,* at pp. 1171-1173.)

### 3.

White insists that the *Harris* test does not apply because courts have already recognized occupational discrimination as a protected classification under the Act. (See *Koebke*, *supra*, 36 Cal.4th at p. 840 [stating *Harris* test applies to new claims of discrimination based on category not listed in the statute or added by judicial construction]; *Sisemore*, *supra,* 151 Cal.App.4th at pp. 1393-1394, 1405-1407; *Long v. Valentino* (1989) 216 Cal.App.3d 1287, 1297 (*Long*); but see *Roth, supra,* 25 Cal.App.4th at p. 539.) We are not persuaded.

In dicta, in the pre-*Harris* case *Marina Point, Ltd. v. Wolfson* (1982) 30 Cal.3d 721, 736, our Supreme Court suggested occupational discrimination is cognizable. But neither *Marina Point,* nor *Sisemore*, *supra,* 151 Cal.App.4th at pages 1405-1406 and *Long, supra*, 216 Cal.App.3d at page 1297, announce a blanket rule to be applied in every case tangentially involving occupation. As we stated above, courts must examine the specific facts pled in a complaint to determine whether the Act applies to a particular business classification. (See *Harris, supra*, 52 Cal.3d at pp. 1165-1168; *Sisemore, supra*, at p. 1407 ["Sisemore contends

9

that she was discriminated against [solely] because of her choice of [occupation], *not* that she was denied a mortgage loan because that choice resulted in her earning insufficient income to meet the lender's underwriting criteria"]; *Long, supra*, at p. 1298 [police officers "may not be refused service in a restaurant, denied an apartment, or ejected from a public meeting *merely* because of their occupation"], italics added.)

Application of the *Harris* test is appropriate here because the facts pled by White demonstrate that Block does not actually discriminate on the basis of occupation and its policy is reasonably related to legitimate business objectives. This means White's claim falls outside the Act, according to our Supreme Court's construction in *Harris*.

In sum, discrimination against consumers that want to use Block's services to conduct bankruptcy and debt collection transactions does not violate the Act as a matter of law. (See *Harris, supra,* 52 Cal.3d at p. 1165.) The trial court did not err in sustaining Block's demurrer. We need not consider the parties' additional arguments.

## DISPOSITION

The judgment is affirmed. Block is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

10

_____
BURNS, J.


We concur:


_____
JACKSON, P.J.


_____
WISEMAN, J.*


A161481

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11